Dwain **FRANZ**, Trustee of the Franz, Children's Trust, Appellant,

v.

**KATY INDEPENDENT SCHOOL DISTRICT,** The City of Houston, Harris County, Harris County Hospital District, and Harris County Flood Control District, Appellees.

No. 01–97–01423–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 14, 2000.

Russell D. Weaver, The Woodlands, for appellant.

Pankaj R. Parmar, Stephen A. Smith, Roddrick D. Murray, Norman J. Nelson, Leah L. Stolar, Lisa Montez, Houston, for appellee.

Panel consists of Justices WILSON, NUCHIA, and DUGGAN.*

## OPINION

DUGGAN, Justice (Retired).

Dwain Franz, trustee of the Franz Children's Trust, appeals a summary judgment order imposing a lien for delinquent taxes, penalties, and interest on his real property. Specifically, the trial court's judgment declared a lien in favor of Katy Independent School District (KISD) for $98,062.42, in favor of the City of Houston for $30,585.44, and in favor of Harris County, Harris County Hospital District (HCHD) and Harris County Flood Control District (HCFCD) for $32,866.48.

In an opinion issued on April 1, 1999, we granted KISD's and the City of Houston's joint motion to dismiss the appeals against

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

them pursuant to settlement agreements. Therefore, only the lien in favor of Harris County, HCHD and HCFCD (the appellees) remains the subject of this appeal.

We affirm.

## Background

In 1983, Franz leased his land to Lavaca Bay Corporation (LBC). LBC built a restaurant ("the improvements") on the property.

Under the lease, the rent for the premises was $2,300 a month for the first five months of the lease and then $3,300 a month thereafter. In addition, Franz was to receive a percentage of LBC's gross sales. Article III(v) of the lease provided Franz was entitled to review LBC's books and to receive accountings annually.

Article V of the lease stated Franz would pay $5,877.57 annually as his pro rata portion of the ad valorem taxes on the property and LBC would pay the remaining taxes. Further, LBC was responsible for all maintenance, repairs, utilities, and insurance for both the land and the improvements. In the event LBC did not promptly pay those expenses, Franz was authorized to make the payments and charge LBC 125% of the sum paid as additional rent.

Article XIII(c) of the lease provided "All right, title, interest in and to improvements erected upon the lease premises by Lessee shall remain the property of Lessee for and during the Primary Term of this Lease and, should Lessee exercise Lessee's option to extend this Lease, Lessee agrees to surrender title to all such improvements to Lessor ... which improvements shall become and remain the property of Lessor and shall not be removed by Lessee."

Finally, Article XI permitted Franz to terminate the lease in the event LBC defaulted on any covenant, condition, or agreement in the lease.

In light of the lease, Franz and/or LBC applied to appellees to separate the taxes on the improvements from the taxation on the underlying real property. The application was apparently granted, and the appellees' tax rolls listed LBC as the owner of the improvements and Franz as the owner of the land. It is undisputed the appellees billed LBC for the property tax on improvements and Franz for the tax on the underlying land. LBC did not pay the taxes on the improvements from 1988 to 1995. The appellees eventually sought payment of the delinquent taxes on the improvements, which totaled $161,514.34 with penalties and interest.[1]

LBC breached the lease agreement when it did not pay rent, pay property taxes from 1987 through 1994, or maintain insurance on the property. In January 1995, Franz terminated the lease and filed a forcible entry and detainer suit against LBC. The Notice of Termination of Ground Lease stated "all rights of Lavaca Bay Corporation, also known as Lavaca Bay, Inc., in and to the improvements situated on the above-described property have terminated, and title to said improvements has vested in Franz Children's Trust, successor to Edward B. Franz, Lessor, in the above-referenced ground lease agreement." Franz did not own the improvements before the termination.

In July 1996, Franz sued for a declaratory judgment that (1) the delinquent taxes on the improvements did not create a lien on his land and (2) any tax lien thereby created on his land would be dissolved if he removed the improvements. He sought costs and attorney's fees under section 37.009 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). Appellees Harris County and HCFCD counterclaimed for the exact opposite declaration and for attorneys fees under section 37.009.

Franz moved for summary judgment, seeking the declarations requested in his

1. As stated above, only $32,866.48 of this      amount was owed to the appellees.

petition. Harris County and HCFCD also moved for summary judgment and argued various grounds in support of declarations the opposite of those Franz sought. Harris County's and HCFCD's summary judgment motions did not address Franz's request for attorney's fees and costs; Franz's summary judgment motion prayed for his own attorney's fees. Neither Franz nor Harris County and HCFCD attached summary judgment evidence of their attorneys fees. In addition, Franz did not contest Harris County's and HCFCD's counterclaim for attorney's fees.

On August 27, 1997, the trial court signed a summary judgment order that rendered a declaratory judgment in favor of KISD, the City of Houston, Harris County, and HCFCD, but did not assess costs or attorney's fees. The order did not contain a "Mother Hubbard clause."

Franz timely perfected an appeal to this Court. We concluded in our opinion of April 1, 1999 that the trial court's judgment was interlocutory and unappealable because it did not address the attorney's fees that Franz, Harris County, and HCFCD sought. Further, there was no Mother Hubbard clause, the parties did not nonsuit their attorney's fees claims, and the trial court did not sever the fees issue. Therefore, we abated the appeal and remanded the cause to the trial court for a hearing to dispose of the attorney's fees issue.

On July 1, 1999, the trial court signed a final judgment that found the delinquent taxes, penalties, and interest due to each appellee and rendered declaratory judgment for all appellees that: (1) the improvements' delinquent taxes, penalties, and interest created a lien upon as much of Franz's land as was needed for the improvements' enjoyment and (2) this lien would attach even if the improvements were demolished. The order also dismissed all of the claims for attorney's fees with prejudice. On February 23, 2000, Franz supplemented the clerk's record to include the final judgment.

In three points of error, Franz complains the trial court erred when it rendered summary judgment in favor of the taxing units. In points of error one and two, he argues the trial court erred when it entered summary judgment that a valid lien on the land secured payment of unpaid taxes, penalties and interest on the improvements. In points of error one and three, he argues the trial court erred when it entered summary judgment that the lien attached even if the improvements were demolished.

## Partial Objection to Mediation

Prior to the abatement and remand of this cause to the trial court, this Court ordered the parties to mediation. The appellees filed a partial objection that stated they did not object to mediation, but they were exempt from being taxed for any cost of mediation. *See* Tex. Tax Code Ann. § 33.49(a) (Vernon 1992) ("a taxing unit is not liable in a suit to collect taxes for court costs, including any fees for ... mediation.").

The case was subsequently abated and remanded, and the parties did not mediate the case. Therefore, the objection is moot.

## Standard of Review

The summary judgment rule provides a method for summarily ending a case that involves only a question of law and no fact issues. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 411 (Tex.App.—Houston [1st Dist.] 1998, no pet.). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997); *Rubalcada*, 960 S.W.2d at 411–12. We render such judgment as the trial court should have rendered. *Agan*, 940

S.W.2d at 81; *Rubalcada,* 960 S.W.2d at 411–12.

Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or it conclusively establishes all elements of an affirmative defense as a matter of law. *Johnson,* 891 S.W.2d at 644.

Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant. *Marchal,* 859 S.W.2d at 412. The nonmovant must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Marchal,* 859 S.W.2d at 412.

■ We will affirm the summary judgment if any of the theories advanced in the defendant's motion for summary judgment is meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Rubalcada,* 960 S.W.2d at 411.

### Validity of the Alleged Lien

In points of error one and two, Franz complains the trial court erred when it rendered summary judgment in favor of the appellees that a lien on the land secures payment of the taxes, penalties, and interest that LBC did not pay on the improvements. Specifically, Franz argues that, because the Tax Code allows for separate taxation of improvements and land, a lien on one cannot be imposed on the other.

Section 25.08(c) of the Tax Code provides:

When a person other than the owner of an improvement owns the land on which the improvement is located, the land and the improvement shall be listed separately in the name of the owner of each if either owner files with the chief appraiser before May 1 a written request for separate taxation on a form furnished for that purpose together with proof of separate ownership. After an improvement qualifies for taxation separate from the land, the qualification remains effective in subsequent tax years and need not be requested again. However, the qualification ceases when ownership of the land or the improvement is transferred or either owner files a written request to cancel the separate taxation.

TEX. TAX CODE ANN. § 25.08(c) (Vernon 1992).

The parties apparently do not dispute (1) the land and improvements qualified for separate taxation during the relevant period and (2) Franz and LBC actually were taxed separately. The statute does not purport to affect a landowner's underlying liability for taxes on property (whether the land or the improvements) for which parties request separate taxation; instead, the statute provides an administrative mechanism for separating the taxes on land and improvements when there are separate owners. The question before us in this case is not whether a landowner is ultimately responsible for paying delinquent taxes on improvements he does not own in every case. Instead, the narrow issue we decide is whether Franz is responsible for the delinquent taxes in light of the fact he assumed ownership of the improvements that were situated on land he already owned. Regardless of whether a lien on improvements could have attached to the underlying real property anyway, we hold Franz is responsible for the delinquent taxes assessed on the improvements on his land because the two estates merged.

One who purchases property does so subject to any delinquent taxes. *Lubbock Indep. Sch. Dist. v. Owens*, 217 S.W.2d 186, 189–90 (Tex.App.—Amarillo 1948, writ ref'd); *Haynes v. State*, 44 Tex. Civ.App. 492, 99 S.W. 405, 409 (Tex.Civ. App.—Dallas 1907, writ ref'd). This rule is consistent with the axiom that a grantor cannot convey better title than he owns. *See Collora v. Navarro*, 574 S.W.2d 65, 70 (Tex.1978); *Collum v. Neuhoff*, 507 S.W.2d 920, 923 (Tex.App.—Dallas 1974, no writ).

In his reply brief, Franz concedes "the lien on the Improvements for delinquent taxes assessed against the Improvements continued to exist even after Appellant took ownership of the Improvements and, therefore, that his title to the Improvements is subject to such lien on the Improvements." However, he also argues that one who acquires property does not become liable for taxes assessed against the property before he acquired it. He relies on *State v. Lincoln Corporation*, 596 S.W.2d 593, 595–96 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.), *Starnes v. Bledsoe Independent School District*, 257 S.W.2d 836, 837 (Tex.Civ.App.—Amarillo 1953, writ ref'd n.r.e.), and *Leonard v. State*, 242 S.W.2d 199, 200 (Tex.Civ.App.—San Antonio 1951, no writ). These cases are not on point. All three deal with whether a purchaser becomes *personally liable* for taxes that were assessed on the property before the purchase. *Lincoln Corp.*, 596 S.W.2d at 595; *Starnes*, 257 S.W.2d at 837; *Leonard*, 242 S.W.2d at 200. While the purchaser does not become personally liable for the delinquent taxes, the property may be subject to a lien. *Leonard*, 242 S.W.2d at 200.

Whether Franz is personally liable for the delinquent taxes is not at issue. Instead, the summary judgment upheld the purported lien *on the property*. When Franz terminated LBC's lease and assumed ownership of the improvements, he did so subject to the lien for the delinquent

taxes. *Owens*, 217 S.W.2d at 189–90; *Haynes*, 99 S.W. at 409.

Therefore, the only remaining question is whether the lien on the improvements may be imposed on the land in this case. The appellees assert that the land is subject to the lien on the improvements because the two estates merged when Franz terminated the lease and assumed ownership of the improvements. We agree.

The doctrine of merger is based on six elements: (1) the existence of a greater and lesser estate; (2) both estates must unite in the same owner; (3) both estates must be owned in the same right; (4) no intervening estate must exist; (5) merger must not be contrary to the intention of the owner of the two estates; and (6) merger must not be disadvantageous to the owner of the two estates. *Flag–Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 9 (Tex.1987); *First Heights Bank, F.S.B. v. Gutierrez*, 852 S.W.2d 596, 612 (Tex.App.—Corpus Christi 1993, writ denied). The termination notice expressed Franz's intent to assume ownership of the improvements as well as the land. Further, the merger was not disadvantageous to him, delinquent taxes notwithstanding. It was a benefit to Franz to assume ownership of the improvements, which are fixtures to his land, in order to secure title to the entire property and to exercise control over the improvements. Therefore, we hold that the two estates (the improvements and the land) merged when Franz terminated the lease and assumed ownership of the improvements.[2]

In this case, once the improvements and land merged, the lien attached to the real property as well. Were we to accept Franz's interpretation of section 25.08, we would have to conclude that the legislature intended to forego collection of taxes on separately owned improvements in the event that the landowner obtained

---

**2.** We note that once Franz assumed ownership of the improvements, the qualification for separate taxation under section 25.08 ended.

title to the improvements. Nothing in the language of the statute indicates an intent to give lessors a windfall (an extinguishment of delinquent tax on the improvements) or to deprive taxing units of revenue from the value of improvements on real property.

Franz contends that he would not receive a windfall by obtaining title to the improvements without having to pay the back taxes because he did not own, use, occupy, or benefit from the improvements during the time the delinquent taxes accrued. We disagree. In addition to receiving a set amount of rent every month, Franz was entitled to a percentage of LBC's gross sales. The lease also gave him a reversionary interest in the improvements. In order to protect his interest, he could have verified LBC had paid the tax on the improvements. The lease permitted him to examine LBC's books. Further, he could have contacted the taxing units directly to determine whether the taxes were current. In the event he discovered that LBC had not paid the taxes, the lease authorized him to pay the tax and to charge LBC 125% of the amount paid as additional rent. The fact that Franz did not exercise his rights under the lease does not relieve him of the obligation to pay the delinquent tax now that he owns the improvements as well. We overrule points of error one and two.

## Destruction of the Improvements

In points of error one and three, Franz argues that the trial court erred when it rendered summary judgment that the lien attached even if the improvements were demolished. Franz's brief does not contain argument, authority, or citations to the record relevant to this contention. Therefore, it is waived. *See* TEX.R.APP. P. 38.1(h); *Sisters of Charity of Incarnate Word v. Gobert,* 992 S.W.2d 25, 31 (Tex. App.—Houston [1st Dist.] 1997, no pet.). We overrule points of error one and three.

## Conclusion

We affirm the judgment.