Opinion issued August 8, 2002



 




 









In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-00585-CV






WILLIAM STEPHENS AND RAY JORDAN, Appellants


V.


WAYNE DOLCEFINO; KTRK TELEVISION, INC.; HENRY
FLORSHEIM; ABC, INC.; AND STEVE BIVENS, Appellees (1)






On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 99-43183






O P I N I O N

 Appellants, William Stephens and Ray Jordan, appeal from a take-nothing
summary judgment rendered on their claims against all appellees (together, "the
KTRK parties"). We affirm the judgment in part, reverse it in part, and remand the
cause.

Background


 At the time of the events underlying this suit, appellant Stephens was the
Deputy City Controller of Houston; appellant Jordan was a Houston Police
Department sergeant; appellee Wayne Dolcefino was an investigative reporter for
appellee KTRK Television, Inc., which in turn was the licensee of KTRK-TV,
Channel 13 in Houston ("Channel 13"; not a party to this suit); appellee Steve Bivens
was a KTRK researcher; appellee Henry Florsheim was KTRK's president and
general manager; and the local KTRK station was an affiliate of appellee ABC, Inc.

 During the summer of 1997, Dolcefino began investigating then Houston City
Controller Lloyd Kelley (also appellants' attorney in this suit) to determine Kelley's
whereabouts during work hours, among other things. (2) As part of this investigation,
Dolcefino sent Bivens to a 2-day continuing legal education program held July 10-11,
1997 at a hotel in San Antonio, Texas ("the San Antonio CLE"). Besides Kelly,
Stephens, Jordan, and then Houston Police Chief C.O. Bradford also attended the San
Antonio CLE. Using a hidden "pager" camera, Bivens recorded Kelley's
whereabouts at the San Antonio CLE.

 The case arises out of Bivens's pager-camera recording of a conversation ("the
courtyard conversation") among appellants, Kelley, and Chief Bradford at the July
10 morning break in an outdoor courtyard of the hotel at which the San Antonio CLE
was held. The KTRK parties admit that the pager camera recorded some sounds, but
claim those sounds were ambient only, were not enhanced, and that any sounds from
the courtyard conversation in particular were incomprehensible. Appellants dispute
the claim that the pager camera could not or did not record the courtyard conversation
comprehensibly. 


 In August 1997, Channel 13 broadcast Dolcefino's report from the Kelley
investigation. Specifically, on August 15, 1997, the television station broadcast
footage recorded at the San Antonio CLE. The broadcast footage contained no
sound. 

 The sound from the pager-camera tape was eventually erased before trial and
before being produced to appellants. The KTRK parties claim the tape was recycled
in the normal course of business, but appellants claim the tape was intentionally
spoliated.

 Appellants sued the KTRK parties for violations of their privacy under Texas
Civil Practice and Remedies Code chapter 123. See Tex. Civ. Prac. & Rem. Code
Ann. § 123.001-.004 (Vernon 1997) ("the wiretapping claim"); (3) negligence;
negligent supervision of the individual defendants; conspiracy to commit the
aforementioned torts; and intentional infliction of emotional distress ("IIED"). 
Appellants sought statutory actual damages, punitive damages, a permanent
injunction, and attorney's fees and costs. Appellants' claims are based on the alleged
non-consensual recording of sound from, not visual images of, the courtyard
conversation.

 In a joint motion, the KTRK parties moved simultaneously for rule 166a(c) and
166a(i) summary judgment against all appellants' claims and against the requested
exemplary damages. After sustaining some of the KTRK parties' objections to
appellants' summary judgment evidence, the trial judge granted the KTRK parties'
summary judgment motion without specifying grounds or stating whether he was
granting the rule 166a(c) or 166a(i) portion of the motion. (4) Appellants moved for
reconsideration/new trial based upon "new evidence," which motion the trial judge
denied after an evidentiary hearing.

Discussion


A. Standard of Review and Burden of Proof

 We follow the usual standard of review for an order granting summary
judgment without specifying grounds. See Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001). The KTRK parties moved for summary judgment under both
rule 166a(c) and 166a(i). (5) We thus apply the standard of review appropriate to each
type of summary judgment motion. See Tex. R. Civ. P. 166a(i) (no-evidence
summary judgment), 166a(c) (traditional summary judgment); Flameout Design &
Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.--Houston [1st Dist.] 1999, no pet.) (166a(i) standard); Science Spectrum, Inc.
v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997) (166a(c) standard).

B. Statute of Limitations

 The KTRK parties moved for 166a(c) and 166a(i) summary judgment on the
ground of limitations. In issue 10, appellants claim summary judgment was
improperly rendered on this ground. 

 The parties agree that the 2-year statute of limitations applies to all appellants'
causes of action. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon 1997)
(suits for personal injury); Mellon Serv. Co. v. Touche & Ross Co., 17 S.W.3d 432,
435 n.1 (Tex. App.--Houston [1st Dist.] 2000, no pet.) (negligence, civil conspiracy);
Collins v. Collins, 904 S.W.2d 792, 804 (Tex. App.--Houston [1st Dist.] 1995) (state
wiretap statute), writ denied, 923 S.W.2d 569 (Tex. 1996); Bhalli v. Methodist Hosp.,
896 S.W.2d 207, 211 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (IIED). 
They also agree that all appellants' causes of action arise out of the July 10, 1997
filming of the courtyard conversation, that Stephens filed suit on August 26, 1999,
and that Jordan first joined that suit on September 27, 1999.


 Limitations is an affirmative defense on which the KTRK parties had the
burden of proof. See Tex. R. Civ. P. 94; Woods v. William M. Mercer, Inc., 769
S.W.2d 515, 517 (Tex. 1988). Only a rule 166a(c) summary judgment could thus
have been rendered on this ground. See Tex. R. Civ. P. 166a(i); Young Refining
Corp. v. Pennzoil Co., 46 S.W.3d 380, 385 (Tex. App.--Houston [1st Dist.] 2001,
pet. denied). We review accordingly.

 Appellants pled the discovery rule by second supplemental petition. (6) It was
thus the KTRK parties' burden to prove the claims' accrual date and conclusively to
negate the discovery rule. See Burns v. Thomas, 786 S.W.2d 266, 267 (Tex. 1990). 
"A cause of action generally accrues, and the statute of limitations begins to run,
when facts come into existence that authorize a claimant to seek a judicial remedy." 
Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514
(Tex. 1998). The discovery rule defers a cause of action's accrual date if the
wrongful act and resulting injury were inherently undiscoverable when they occurred
but may be objectively verified. S.V. v. R.V., 933 S.W.2d 1, 6 (Tex. 1996). To be
inherently undiscoverable, an injury must be unlikely to be discovered within the
prescribed limitations period despite due diligence. Id.

 The KTRK parties' summary judgment motion asserted (1) the alleged torts
occurred July 10, 1997 and (2) the discovery rule did not apply because (i) the alleged
injury (invasion of privacy) was neither inherently undiscoverable nor objectively
verifiable and (ii) the August 15, 1997 broadcast of footage from the San Antonio
CLE defeated the discovery rule. In support, the KTRK parties produced the
following summary judgment evidence:


 On August 15, 1997, the KTRK parties broadcast a news report
about Kelley's attendance at the San Antonio CLE.

 The specific footage of the courtyard conversation was never
broadcast, but excerpts of the pager-camera footage made at the
San Antonio CLE--including footage showing Kelley and
Stephens (but not Jordan) entering the hotel courtyard during the
July 10 morning break--were broadcast on August 15, 1997.




 Stephens saw the August 15, 1997 broadcast showing
surveillance footage from the San Antonio CLE, including the
footage, shot from the hotel courtyard, of his and Kelley's
entering the courtyard.

 Stephens testified that, after seeing the August 15 broadcast, he
did not then inquire about the tape's contents.

 Kelley also saw the August 15, 1997 broadcast showing
surveillance footage from the San Antonio CLE. 


 

 In response, appellants rely on the following: (7)



 The KTRK parties stipulated that they first produced the
videotape from the San Antonio CLE on August 13, 1999, in
response to discovery requests in Randolph et al. v. Dolcefino et
al., Cause No. 97-45492, 127th District Court, Harris County. 

 Jordan was not shown in the broadcast footage from the San
Antonio CLE.

 Stephens testified he did not realize when he saw the broadcast
that the San Antonio CLE footage was taken from a hidden
camera. (8)


 The KTRK parties undisputedly proved the alleged torts occurred on July 10,
1997. However, we hold the KTRK parties did not conclusively negate the discovery
rule. The filmclip taken at the San Antonio CLE was broadcast without sound. The
courtyard was a public place, and as discussed below, a videotape without sound
there would not have violated the law; in contrast, a surreptitious audiotaping of
conversations there could have violated the law, depending on the circumstances. 
Although Stephens was on notice when he saw the August 15 broadcast that he had
been videotaped, he could not reasonably have been expected to know that the
videotape included sound. Based solely on the KTRK parties' summary judgment
evidence, why would a reasonable person in Stephen's position presume that he had
been audiotaped without permission by a stranger to his conversations (potentially an
offense), when the evidence showed only that he had been videotaped in a public
place (not an offense)? Furthermore, the KTRK parties did not prove when, if ever,
Jordan saw the broadcast, and, in any event, that broadcast showed only Kelley and
Stephens (not Jordan) entering the courtyard.

 At oral argument, the KTRK parties relied on Randolph v. Dolcefino, in which 
the Fourteenth Court of Appeals held that limitations barred Kelley's wiretapping
claim against the defendants (KTRK-related entities), based on audio recordings of
his conversation with Chief Bradford at the San Antonio CLE. See id., No. 14-00-00602-CV, slip op. at 18-19 (Tex. App.--Houston [14th Dist.] Aug. 16, 2001, pet.
denied) (not designated for publication). However, the Randolph defendants
produced uncontroverted proof that Kelley actually discovered the next day that
sound from that conversation had been recorded. See id., slip op. at 19. The KTRK
parties did not produce such evidence here. Furthermore, Kelley is not a plaintiff in
this suit, and his knowledge would not necessarily show appellants' knowledge. 
Randolph thus does not control.

 Accordingly, we hold the KTRK parties did not conclusively negate the
discovery rule. Thus, summary judgment could not properly have been rendered on
this ground.

 We sustain issue 10.


C. Laches

 The KTRK parties moved for rule 166a(c) and 166a(i) summary judgment on
the ground of laches. In issue 11, appellants claim summary judgment was
improperly rendered on this ground. 

 Laches is an affirmative defense on which the KTRK parties had the burden of
proof. City of Houston v. Muse, 788 S.W.2d 419, 422 (Tex. App.--Houston [1st
Dist.] 1990, no writ). Only a rule 166a(c) summary judgment could thus have been
rendered on this ground. See Tex. R. Civ. P. 166a(i); Young Refining Corp., 46
S.W.3d at 385. We review accordingly.

 To establish laches conclusively, the KTRK parties had to show (1) appellants'
unreasonable delay in asserting a legal or equitable right and (2) the KTRK parties'
good faith change of position, to their detriment, in reliance on appellants' delay. 
Muse, 788 S.W.2d at 422. The only evidence the KTRK parties offered was
Dolcefino's affidavit testimony that "[d]efendants are prejudiced by the delay in
Plaintiffs' filing this suit because of potentially faded memories and the inability to
collect all evidence necessary to defend the claims asserted." This is not evidence of
any good-faith change in position by the KTRK parties to their detriment. 
Accordingly, summary judgment could not have been granted on this ground.

 We sustain issue 11.

D. The "Derivative Claims": Intentional Infliction of Emotional Distress,
Negligence (and Negligence Per Se), Negligent Supervision, and Civil
Conspiracy


 The KTRK parties moved for rule 166a(c) and rule 166a(i) summary judgment
on all elements of intentional infliction of emotional distress, negligence (including
negligence per se), negligent supervision, and civil conspiracy. The KTRK parties
also moved (1) against the negligent-supervision claim on the ground that it was not
a separate cause of action from negligence; (2) against all four "derivative" claims
because the claim on which the derivative claims were based (privacy invasion)
allegedly failed; and (3) against the civil conspiracy claim because a corporate
defendant could not conspire with its own agents. 

 Appellants' sole briefing on any of these claims appears on two pages of their
brief. There is virtually no attempt to discuss the four claims' elements separately. 
There is no discussion of whether negligent supervision could exist separately from
negligence or of whether a corporate defendant can conspire with its own agents. 
There is no citation to any authority. The only record citation is to one page of the
KTRK parties' summary judgment motion. Although appellants also cite to
Appendices A and B of their brief, nothing shows that these appendices contain
materials that are part of our record, and the KTRK parties claim they are not.


 Accordingly, we hold appellants waived the challenges for lack of adequate
briefing. See Tex. R. App. P. 38.1(h); Franz, 35 S.W.3d at 755. We thus overrule
issues 12 and 13, as well as any of the derivative-claim arguments that could be
construed as being encompassed by issue three.

E. Exemplary Damages

 The KTRK parties moved for rule 166a(c) and 166a(i) summary judgment
against appellants' request for exemplary damages on the grounds that (1) no
evidence existed on the elements of fraud, malice, ill will, reckless disregard, etc. and
(2) the federal and state constitutions prohibited exemplary damages. See U.S.
Const. I, XIV; Tex. Const. art. I, § 8.

 In issue seven, appellants state their challenge to the exemplary-damages
summary judgment ground as follows: "Whether the trial court erred in granting
Appellees' motion for summary judgment because the Constitution does not bar
exemplary damages?" That issue refers to page 37 of the brief, but that page does not
concern exemplary damages or the First Amendment, and appellants' briefs do not
contain any argument in support of this issue. Accordingly, we hold appellants
waived issue seven by inadequate briefing. See Tex. R. App. P. 38.1(h); Franz, 35
S.W.3d at 755. Even if this issue were adequately briefed, we would still affirm
because appellants do not challenge the alternate ground for summary judgment on
exemplary damages, i.e., no evidence of fraud, malice, ill will, reckless disregard, or
the like. Because any error on that alternate ground is unassigned, we would affirm
the summary judgment prohibiting exemplary damages. See Garcia v. Nat'l
Eligibility Express, Inc., 4 S.W.3d 887, 889 (Tex. App.--Houston [1st Dist.] 1999,
no pet.).

 We overrule issue seven.

F. The Wiretapping Claim


 The KTRK parties moved for rule 166a(c) and 166a(i) summary judgment
against the wiretapping claim on (1) all elements of the claim and (2) the ground that
the KTRK parties' actions related to newsgathering activities, which allegedly
precluded liability and damages under the federal and state constitutions. See U.S.
Const. I, XIV; Tex. Const. art. I, § 8. In issues one, two, four, five, six, 16, and
parts of issue three, appellants argue the trial judge erred in rendering summary
judgment against the wiretapping claim.

 1. Preliminary Matter

 For purposes of our review of this summary judgment, appellants' privacy-invasion claim stands or falls under Texas Civil Practice and Remedies Code chapter
123. See Tex. Civ. Prac. & Rem. Code Ann. § 123.001-.004. Appellants' "live"
petition alleged privacy invasion claims under the common law, "the Constitution,"
and "laws enacted" to protect privacy rights, without specifying which constitutional
or statutory provisions. However, appellants conceded in their summary judgment
response that their cause of action for privacy invasion was made solely under chapter
123. (9) Cf. Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex.
2001) (holding party's summary judgment response and counter-motion for summary
judgment contained clear and unequivocal judicial admission that bound that party). 
By this concession, appellants abandoned all privacy-invasion claims, except that
asserted under chapter 123, before summary judgment was rendered. Even if
appellants had not abandoned their other privacy-invasion claims, the trial judge
would properly have rendered summary judgment on them under 166a(i) because
appellants did not "point out evidence that raises a fact issue on the challenged
elements" of those claims. See Tex. R. Civ. P. 166a(i), comment to 1997 amendment.

 We thus overrule issue eight, as well as all argument under any of appellants'
issues concerning invasion of privacy arising under the common law, either
constitution, or any state or federal statute other than chapter 123, because those
claims were not before the trial court at the time of summary judgment and are not
before us or, alternatively, were properly disposed of under rule 166a(i).

 2. The Texas Statutes

 § 123.002. Cause of Action.

 (a) A party to a communication may sue a person who:


 (1) intercepts, attempts to intercept, or employs or obtains another
to intercept or attempt to intercept the communication; . . . .


Tex. Civ. Prac. & Rem. Code Ann. § 123.002(a) (emphasis added).

 § 123.001. Definitions.

 In this chapter:


 (1) "Communication" means speech uttered by a person or information
including speech that is transmitted in whole or in part with the aid of
a wire or cable.


 (2) "Interception" means the aural acquisition of the contents of a
communication through the use of an electronic, mechanical, or other
device that is made without the consent of a party to the communication,
but does not include the ordinary use of:


 (A) a telephone or telegraph instrument or facility or telephone and
telegraph equipment;


 (B) a hearing aid designed to correct subnormal hearing to not better
than normal;


 (C) a radio, television, or other wireless receiver; or


 (D) a cable system that relays a public wireless broadcast from a
common antenna to a receiver. 

Tex. Civ. Prac. & Rem. Code Ann. § 123.001 (emphasis added).

 3. Discussion

 a. Judicial Notice of Judge Wood's Order

 In issues one, two, and 16, appellants claim the trial judge erred in rendering
summary judgment on the wiretapping claim because (1) the trial judge took judicial
notice of an order by Judge Wood in Lloyd Kelley's lawsuit in the 127th District
Court of Harris County, (2) Judge Wood's order allegedly recited that the KTRK
parties had spoliated the pager-camera tape of the courtyard conversation by deleting
its sound, and (3) that spoliation finding sufficed to defeat a rule 166a(i) summary
judgment as a matter of law and to raise a fact issue on a rule 166a(c) summary
judgment. The KTRK parties dispute that Judge Wood's order found spoliation. 
They do not dispute that they deleted the sound from the videotape at issue, but they
claim they did so before any suit's filing and solely under their usual business
practice of recycling tapes.

 Judge Wood's order read in pertinent part as follows:

 After considering the testimony and evidence in the sanctions
hearing [on plaintiffs' motion] concluded in December, the relief
requested is granted in part and denied in part as to the issue of the
sound on the 8mm tapes . . . .


 1. 8mm tapes. Plaintiffs' request to strike defendants' [KTRK-related parties] pleadings for taping over prior 8mm surveillance tapes
during July and August of 1997 is denied. The court finds that the acts
complained about were prior to suit. A jury is entitled to consider this
conduct as part of the evidence in the case.


 From the evidence submitted by plaintiffs, the court finds that the legal
threshold has been met to entitle plaintiffs to present this evidence at
trial. A decision by the Court on whether to submit an instruction to the
jury on spoliation, and, if so, what wording to submit, should be decided
at the close of evidence based on all the evidence admitted. All counsel
should be prepared to discuss the correct wording of any such
instruction at the time of the pre-trial conference in the case.


 This is not a ruling that the KTRK parties "intentionally spoliated" the tapes'
sound, but is instead a ruling that, based on the evidence presented to Judge Wood,
the plaintiffs had made a threshold showing entitling them to present spoliation
evidence to the jury in that case. Judge Wood expressly reserved ruling on whether
to submit a spoliation instruction. Thus, Judge Wood's order, by itself, could not
defeat the rule 166a(i) summary judgment as a matter of law or raise a fact issue on
the rule 166a(c) summary judgment. (10)

 We overrule issues one, two, and 16.

 b. Fact Issues on Wiretapping Claim

 In issue four and part of issue three, appellants claim the trial judge erred in
rendering rule 166a(c) and 166a(i) summary judgment against their wiretapping claim
because material fact issues existed.

 Appellants' wiretapping claim had the following elements: (1) the KTRK
parties intercepted or attempted to intercept, (2) by using an electronic, mechanical,
or other device, (3) the contents of speech uttered by appellants (4) without the
consent of at least one party to appellants' conversation. (11) See Tex. Civ. Prac. &
Rem. Code Ann. §§ 123.001(a)(1), 123.002(a)(1). The parties dispute only the
claim's first, third, and fourth elements. For ease of discussion, we discuss the
elements out of order.

 Contents of Appellants' Speech

 The KTRK parties' position here and below was that no discernable speech
was recorded, but only garbled or ambient noise. (12) However, at the evidentiary
hearing on appellants' motion for reconsideration/new trial, appellants presented
sworn testimony that the very pager camera at issue here also clearly recorded--at a
later date, when appellants tested it under what they testified were similar and even
noisier conditions--conversations at distances even further from the distance at
which Bivens recorded appellants' conversation. (13) The trial judge ruled that he would
consider evidence from the reconsideration/new trial hearing to be part of the
summary judgment record. (14) This evidence alone raises a fact issue on whether the
pager camera could or did intercept and record the actual contents of appellants'
courtyard conversation.

 Intercept or Attempt to Intercept

 The KTRK parties' rule 166a(c) motion relied on Dolcefino's and Bivens's
affidavit testimony that (1) they did not intend to record anyone's private
conversations at the San Antonio CLE, (2) the pager camera could record only
ambient sounds because its audio capability was less than that of the human ear, (3)
no audio-enhancing equipment was used on the pager camera, and (4) the KTRK
parties' investigative unit had no use for the ambient sound appellants claim the pager
camera recorded. The KTRK parties' 166a(i) summary judgment motion asserted
there was no evidence they attempted to or did record anything with the pager
camera. 


 We hold that there was evidence raising a fact issue on this element. First,
given the parties' conflicting evidence on whether the pager camera could record
conversations clearly under allegedly similar conditions, and given Bivens's
testimony that he could hear only a few words of the courtyard conversation with his
"bare" ears, a factfinder might disbelieve the KTRK parties' further evidence that the
pager camera was not enhanced for sound. That is, there is a fact issue on whether
the pager camera was so enhanced.

 Second, appellants produced evidence that (1) Bivens stood within feet of
appellants, Kelley, and Chief Bradford, although our review of the courtyard tape
shows that the pager camera could record visual images at further distances; (2)
Dolcefino considered the pager camera's audiotape to be "potentially important" for
confirming what Bivens thought he overheard in the courtyard conversation, which
implicated a "breaking story"; (3) Bivens and Dolcefino admitted they listened to the
San Antonio tape to determine whether they could understand the courtyard
conversation; and (4) Dolcefino tried to have the tape's sound enhanced to determine
whether the conversation could be understood. Viewed in the appropriate light, these
facts raise an inference that the KTRK parties attempted and intended to use, or did
use, the pager camera to intercept sound from the courtyard conversation.


 Without Consent 

 The KTRK parties argue here, as they did below, that appellants implicitly
consented, within the meaning of chapter 123, by speaking in a public place where
they did not have an objective expectation of privacy. (15) In support, the KTRK parties
presented evidence that the courtyard was a crowded public place and that appellants,
Kelley, and Chief Bradford stood next to the buffet table, which "plenty" of people
visited.

 However, The KTRK parties' evidence indicated there was a din of voices in
the courtyard. Apparently because of that din, Bivens testified that he stood only five
to seven feet from the four men, yet overheard "with [his] naked ear" only "a few
words that were spoken." Bivens did not claim to have heard the entire conversation,
despite his proximity. Stephens testified that the four men spoke in a "normal or
normal to low" conversational tone, and Jordan testified that the four men stood close
together so that they "wouldn't have to talk loudly." Dolcefino testified that he was
interested in enhancing the tape's sound because, from the few words Bivens thought
he had overheard, Dolcefino thought Chief Bradford might have been discussing with
Kelley an on-going investigation that involved Kelley. If that topic was being
discussed, (16) a reasonable inference is that the participants would not have wanted to
broadcast that discussion.

 We have viewed the videotape, which shows the following: (1) the buffet table
was along one of the courtyard's walls, not in the center; (2) the four men stood
within a foot or two of each other and, as a group, within a few feet of a corner of the
courtyard that was to the side of the buffet table; (3) no one else stood on that side of
the four men or was seen approaching them on that side; (4) although they stood close
to the buffet table, Chief Bradford, who was the closest of the four to the table, stood
mainly with his back to the table; and (5) Stephens at times looked around while the
men spoke. 

 Viewed in the appropriate light, a factfinder could reasonably infer from all of
the above facts (17) that appellants, Kelley, and Chief Bradford were speaking in a tone
that could objectively be considered private, that they did not intend to be audible,
and that might not actually have been fully audible, given (1) their location in the
courtyard, (2) the manner in which they were standing there, (3) Stephen's looking
around periodically, (4) the din around them, and (5) the conversation's alleged,
possible content. A fact issue thus exists on whether, as the KTRK parties claim,
appellants implicitly consented by speaking in a place and manner for which there
was no objective privacy expectation.

 We distinguish the cases on which the KTRK parties rely because their facts
touching on a privacy expectation differed materially. (18) We decline to adopt a rule
that conversations conducted in public, outside areas are per se devoid of any privacy
expectation. See Fordyce v. City of Seattle, 840 F. Supp. 784, 793 (W.D. Wa. 1993)
("This decision does not mean that there could never be a private conversation in a
public place (for example, in tones not audible to third persons), or that surreptitious
recording without consent is beyond the reach of legislation.") (emphasis in original),
vacated on same issue on procedural grounds, 55 F.3d 436, 440-42 (9th Cir. 1995).

 Accordingly, we will sustain issue four and the corresponding part of issue
three if the trial judge also erred in granting summary judgment on the ground that the
KTRK parties' actions were protected by the First Amendment (discussed below).

 c. First Amendment Defenses

 In issues five and six, appellants claim the trial judge erred in rendering rule
166a(c) and 166a(i) summary judgment against the wiretapping claim on the ground
that the federal Constitution's First Amendment, and the state Constitution's Article
One, Section Eight, precluded liability and damages. (19) See U.S. Const. amend. I;
Tex. Const. art. I, § 8.

 The basic rule established (or noted in dictum) by the cases on which the
KTRK parties rely is that, when a media defendant lawfully obtains truthful
information about a matter of public significance, the state may not constitutionally
punish the information's publication absent a state interest of the highest order. See
Smith v. Daily Mail Publ'g Co., 443 U.S. 97, 103-04, 105-06, 99 S. Ct. 2667, 2671,
2672 (1979); Peavy v. N.Y. Times, Inc., 976 F. Supp. 532, 538 (N.D. Tex. 1997). 
However, the media "'has no special immunity for the application of general laws. 
[It] has no special privilege to invade the rights and liberties of others.'" Branzburg
v. Hayes, 408 U.S. 665, 683, 92 S. Ct. 2646, 2657 (1972). Nor does the First
Amendment guarantee the press a constitutional right of special access to information
not available to the public generally. Branzburg, 408 U.S. at 684, 92 S. Ct. at 2658.

 The KTRK parties expressly recognize in their brief that neither the First
Amendment nor Article One, Section Eight allows them to violate the law. They
instead argue that their actions were lawful. We have already held, however, that
there are fact issues on whether the KTRK parties violated chapter 123 by attempting
to record or by recording the courtyard conversation. Until those fact issues are
resolved, it cannot be determined as a matter of law whether the KTRK parties legally
obtained the audio recording and could thus possibly invoke either constitution's
protection. See Branzburg, 408 U.S. at 691, 92 S. Ct. at 2662 (in dictum, stating,
"Although stealing documents or private wiretapping could provide newsworthy
information, neither reporter is immune from conviction for such conduct, whatever
the impact on the flow of news."). For this reason, the above-cited cases on which
the KTRK parties rely are distinguishable. See also Cox Broadcasting Corp v. Cohn,
420 U.S. 469, 95 S. Ct. 1029 (1975) (also relied on by the KTRK parties, but
distinguishable because concerned media's publishing information found in
indictment that was public record). Accordingly, we sustain issues five and six.

 Because we have sustained issues five and six, we also sustain issue four and
the corresponding part of issue three because fact issues exist on the wiretapping
claim. We thus need not reach appellants' issue 15, concerning the denial of their
new trial motion.

Conclusion


 We reverse the judgment insofar as it rendered a take-nothing judgment on
appellants' wiretapping claim under chapter 123 and insofar as it granted summary
judgment on the KTRK parties' defenses of limitations, of laches, under U.S. Const.
amend. I, and under Tex. Const. art. I, § 8. We affirm the summary judgment in all
other respects. We remand the cause.

 We further overrule appellants' motion for sanctions.



 Sam Nuchia

 Justice



Panel consists of Justices Nuchia and Wilson. (20)


Justice Cohen, who retired from the Court before this opinion's issuance, not
participating.


Do not publish. Tex. R. App. P. 47.
1. Appellants' brief indicates CC Texas Holding Company is an appellee, but that
party does not appear to have been served by citation.
2. This investigation has spawned other litigation, as well. See Randolph v.
Dolcefino, 19 S.W.3d 906 (Tex. App.--Houston [14th Dist.] 2000, pet. denied)
(on appeal from 55th District Court, Harris County, in suit by Kelley and
Cynthia Randolph for defamation surrounding investigation and broadcast of
Kelley's actions (other than at the San Antonio continuing legal education
seminar at issue here), reversing and rendering for KTRK-related defendants);
Randolph v. Jackson Walker, 29 S.W.3d 271 (Tex. App.--Houston [14th Dist.]
2000, pet. denied) (on appeal from 127th District Court, Harris County,
affirming order striking, under Tex. R. Civ. P. 13, Randolph and Kelley's
pleadings against attorneys for KTRK-related defendants); Randolph v.
Dolcefino, No. 14-00-00602-CV (Tex. App.--Houston [14th Dist.] Aug. 16,
2001, pet. denied) (not designated for publication) (on appeal from 127th
District Court, Harris County, reversing and rendering for KTRK-related
defendants in suit for defamation and related torts (Kelley and Randolph) and
wiretap-statute violations (Kelley only)).
3. As explained further below, appellants' invasion-of-privacy claim is limited in
this appeal to this statute.
4. Appellants claim the trial judge rendered summary judgment only (1) under
rule 166a(i) and (2) on the ground that the KTRK parties never recorded any
sound. That is a mischaricterization of the judge's order, which reads in
pertinent part as follows:


 Additionally, the plaintiffs have asked this Court [to] take
judicial notice of the February 8, 2000 order of the 127th District
Court attached as exhibit b to the plaintiff's response. This Court
takes notice of Judge Wood's order.


 In their summary judgment, the defendants claim that not one
word uttered by any of the participants to the conversation of which
plaintiffs complain was ever recorded by any defendant. Indeed, this
is the foundation of the "no evidence" component of their summary
judgment motion. In response to this claim, the plaintiffs requested
certain relief. Plaintiffs asked this Court to take judicial notice of the
order of the 127th [District Court] referred to above or compel the
defendants to produce the pager camera for testing and grant a
continuance to allow that testing. As noted, this Court has taken
judicial notice of Judge Wood's order. The [plaintiffs'] motion to
compel and the motion for continuance are therefore denied (by
separate orders dated March 15, 2000).

 After considering the summary judgment, the response, the
arguments of counsel, the Court grants the defendants' motion for
summary judgment. Therefore, plaintiffs shall take nothing by reason
of their claims herein. All costs shall be taxed against the plaintiffs
for which execution shall issue. All other relief not expressly granted
herein is denied.


 (Italicized portions relied on by appellants.) The quoted portion on which
appellants rely concerned a preliminary, evidentiary ruling, not the ultimate
ruling. The remainder of the quotation shows the trial judge did not specify
grounds.
5. In issue 17, appellants claim the trial judge erred in "considering conclusory
no-evidence motion for summary judgment." However, in support of this
issue, appellants refer only to page five of their brief, which is simply the
brief's discussion of the summary judgment burden of proof and standard of
review. Other than saying "[the KTRK parties'] no-evidence motion was
purely conclusory," that page offers no argument, analysis, or record citation. 
Issue 17 is thus waived for inadequate briefing. See Tex. R. App. P. 38.1(h);
Franz v. Katy Indep. Sch. Dist., 35 S.W.3d 749, 755 (Tex. App.--Houston [1st
Dist.] 2000, no pet.).
6. The KTRK parties claim the February 29, 2000 second supplemental petition
was filed six days after the summary judgment hearing, thus making the
supplement (and appellants' discovery-rule pleading) late. This claim is
somewhat misleading about the sequence of events. The second supplemental
petition was filed on February 29, 2000, six days after the hearing was due to
have been held (February 23, 2000). However, either the summary judgment
hearing was not held on February 23, 2000 or, if it was held, the judge allowed
the parties more time to brief. One of these two things necessarily happened
for the following reasons. First, the summary judgment order recognized that
a telephone hearing on at least related issues took place on March 16, 2000. 
A hearing postponed until March 16 would have made appellants' amendment
timely. See Tex. R. Civ. P. 63 (amended pleadings may generally be filed
without leave of court more than seven days before trial); Goswami v.
Metropolitan Sav. & Loan Ass'n, 751 S.W.2d 487, 490 (Tex. 1988) (summary
judgment proceeding is considered "trial" for purposes of rule 63). Second, the
KTRK parties' summary judgment reply, which objected to the lateness of
appellants' discovery-rule pleading, was not filed until March 3, 2000, nine
days after the original hearing date. Third, the trial judge expressly recited that
he considered all summary judgment pleadings, including the KTRK parties'
March 3 reply, in his ruling. We also note that, although the KTRK parties
objected to the supplement and claimed surprise, the record contains no ruling
on that objection. Thus, even if the second supplemental petition had been
untimely, which it does not appear to have been, we would nevertheless
presume the trial judge considered the supplement, there being nothing in the
record to the contrary. See Goswami, 751 S.W.2d at 490.
7. In addition to the facts recited here, appellants rely on the alleged facts that
"[The KTRK parties] concede that there was no way for Appellants to obtain
a copy of the 'spy' tapes absent their production in the Randolph case" and
"[the KTRK parties] never revealed they possessed film of Appellants'
conversation until they were forced to produce it in discovery in the 127th
[District Court] case." However, appellants give no record citation to support
these alleged facts, and we will thus not consider them. Additionally,
appellants rely on testimony from their own summary judgment affidavits, but
we may not consider this testimony because the trial judge granted the KTRK
parties' objections to this testimony before rendering summary judgment. One
of the KTRK parties' objections was that neither affidavit was produced in
discovery, although both were dated over three or four months before summary
judgment was sought. The trial judge's granting the objections without
specifying why was thus tantamount to striking the affidavits. On appeal,
appellants do not complain of the judge's ruling on their summary judgment
evidence. We also note that the struck testimony does not say exactly what
appellants' brief claims it does.
8. Contrary to appellants' claim that they both testified to this, only Stephens did.
9. In that pleading, appellants admitted that their privacy-invasion claim "is
simply a statement of the cause of action afforded Texas under C.P.R.C. 123,"
and they expressly disavowed any privacy-invasion claim under the common
law, the Texas Penal Code, or federal statute.
10. Judge Wood's order is not exactly what the KTRK parties claim, either. They
claim the order


 did not make a finding of spoliation . . . Judge Wood specifically
declined to grant a request (by litigant Kelley) to sanction KTRK
. . . Rather, Judge Wood accepted KTRK's evidence and
concluded that the 8mm pager camera tape was recycled before
trial. . . . Indeed, the trial court found the essential facts that
preclude a finding of spoliation--that the tape was recycled "prior
to suit."


 Judge Wood did not find that the tape was "recycled," however, but simply that
the sound was deleted from it before suit. The KTRK parties conceded in their
response to appellants' spoliation motion in the current lawsuit that "in limited
circumstances, a duty to preserve evidence may arise where a party either has
notice of a potential claim or reasonably expects litigation." Judge Wood's
finding thus did not exonerate the KTRK parties on spoliation or, as they
claim, "preclude a finding of spoliation." In fact, Judge Wood found only that
the plaintiffs in that case had made a threshold showing of spoliation and that
the judge had not yet ruled out instructing the jury on spoliation.
11. Appellants claim that lack of consent is an affirmative defense, rather than an
element of a chapter-123 wiretapping claim. The authority appellants cite does
not discuss the burden of proof, however, and concerns consent to search in the
criminal context, not lack of consent under a wiretapping statute. See United
States v. McCann, 465 F.2d 147, 157 (5th Cir. 1972). In any event, given our
disposition, we need not decide this question.
12. On appeal, the KTRK parties also argue for the first time that chapter 123
applies only to speech that is transmitted by wire or cable. Even if this
interpretation is correct, which we do not decide, the KTRK parties waived the
argument by not asserting it as a summary judgment ground. See McConnell
v. Southside Ind. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).
13. We have viewed the tape and can easily discern Jordan and Kelley speaking,
in areas varying in crowdedness and noisiness, at distances up to 10 feet from
the pager camera.
14. In issue 14, appellants claim the trial judge erred in granting summary
judgment without first allowing them to test the pager camera "to see if it could
record voices under similar conditions as when originally operated" by the
KTRK parties and in "ignor[ing] a test of that same [pager] camera ordered by
the 127th District Court." First, this issue is waived because no argument
supports it. See Tex. R. App. P. 38.1(h); Franz, 35 S.W.3d at 755. Second,
appellants had asked the trial judge to take judicial notice of Judge Wood's
order or to grant a continuance for testing the pager camera. The trial judge
opted for the former. There is no error. Third, appellants presented evidence
of the pager camera's test results at the reconsideration/new trial hearing, and
the trial judge expressly ruled that that new evidence became part of the
summary judgment record. Accordingly, any error was cured at the new trial
hearing. For all these reasons, we overrule issue 14.
15. Appellants rely on the statute's plain language to argue that chapter 123 does
not require an expectation of privacy, but instead requires nothing less than
express consent. Compare Tex. Civ. Prac. & Rem. Code Ann. § 123.00(2)
("'Interception' means the aural acquisition . . . without the consent of a party
to the communication . . . .") with Tex. Penal Code Ann § 18.20(2) (Vernon
Supp. 2002) ("'Oral communication' means an oral communication uttered by
a person exhibiting an expectation that the communication is not subject to
interception."). They also rely on Kotrla v. Kotrla, but this case merely
paraphrases the statute without holding as appellants claim. See 718 SW.2d
853, 855 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.). Of course,
consent can be implicit, and it would be reasonable to recognize implicit
consent in the circumstances argued by the KTRK parties. See Fordyce v. City
of Seattle, 840 F. Supp. 784, 789, 792-93 (W.D. Wa. 1993) (under Washington
wiretap statute requiring consent, reviewing for expectation of privacy),
vacated on same issue on procedural grounds, 55 F.3d 436, 440-42 (9th Cir.
1995), on remand, 907 F. Supp. 1446 (W.D. Wa. 1995); see also Tex. Penal
Code Ann § 18.20(4) (defining "electronic, mechanical, or other device"
within the meaning of the criminal wiretap statute to mean device used for
"nonconsensual interception."). Appellants' reply brief even acknowledges
that "[g]enerally, 'expectation of privacy' is equated with consent . . . ." We
need not decide the matter, however, because we hold below that, even under
the KTRK parties' interpretation equating consent with a reasonable
expectation of privacy, a fact issue exists.
16. We do not state that was this topic was actually discussed; we merely note
Dolcefino's testimony for purposes of determining whether a fact issue exists.
17. Appellants also rely on material other than that discussed here, but we do not
rely on that material because it was either struck, came from a pleading, was
not part of the record, did not say exactly what appellants' brief represents, or
is unnecessary to our disposition, given the evidence discussed.
18. See Fordyce, 840 F. Supp. at 792-93 (holding no privacy expectation existed
when plaintiff, using "readily apparent recording device" at close range on
sidewalk during public demonstration, recorded voices--audible to
passersby--of woman and her nephews, even after woman had told plaintiff
to cease); Wilkins v. Nat'l Broad. Co., 84 Cal.Rptr.2d 329, 336-37 (Cal. Ct.
App. 1999, review denied) (holding no intrusion into private place when two
defendant reporters, who posed as potential investors, met with company
representatives; reporters brought two others with them, and the representatives
did not question two guests' presence; representatives, reporters, and guests sat
at table close to other tables on crowded restaurant patio; table was not
secluded; representatives spoke freely in sales pitch, even when waiters came
by; representatives did not conduct themselves as if information was private
and admitted providing same sales pitch to hundreds of other potential
investors; and reporters surreptitiously recorded conversation); Agnew v.
Dupler, 717 A.2d 519, 524 (Pa. 1998) (holding no reasonable expectation of
privacy existed when plaintiff spoke to one officer in second officer's
presence, then to second officer in first officer's presence, in a squadroom
whose door was open, allowing plaintiff's voice to be heard without intercom
or amplification down hall, where defendant was listening in lighted office to
squadroom conversations on intercom); Mark v. Seattle Times, 635 P.2d 1081,
1094-95 (Wa. 1981) (holding no privacy invasion when defendant reporter
videotaped plaintiff through window, when place where reporter stood was
open to public and view was visible to passersby).
19. In issue 18, appellants claim the trial judge erred in denying their own
summary judgment motion concerning the KTRK parties' First Amendment
affirmative defenses. However, the one page in their brief to which issue 18
refers does not indicate where this motion can be found, and we have found no
such motion in our record. Accordingly, we overrule issue 18.
20. Justice Davie Wilson, who retired from the First court of Appeals on March 31,
2002, continues to sit by assignment for the disposition of this cause, which
was submitted on March 18, 2002.