**CITY OF HOUSTON, Appellant,**

v.

**Paul MUSE and Lila Muse, d/b/a L & P Sales and Service, Appellees.**

**No. 01–89–00487–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 5, 1990.

Clarance A. West and Edwin Taylor Grauke, Houston, for appellant.

James Sean Healey, Houston, for appellees.

Before EVANS, C.J., and HUGHES and COTTEN, JJ.

## OPINION

COHEN, Justice.

The City of Houston sued the Muses to enjoin them from operating a business in violation of a covenant restricting property use to residential purposes only. The trial

judge found that the Muses breached the covenant by using the premises as a business. He also found against them on their affirmative defenses of waiver and limitations, but found for them on the defense of laches. For its remedy, the court neither entirely prohibited the operation of the business nor allowed it to operate unrestricted. Instead, the trial court allowed it to continue, but enjoined the Muses from displaying signs visible from the street; from keeping refuse in plain view; from allowing more than two vehicles at once in the driveway and adjoining street; and from unloading or loading goods at the premises onto vehicles of more than two axles.

On appeal, the Muses have not attacked the trial court's finding that they breached the covenants or its finding against their defenses of waiver and limitations. The City contends the trial court erred in finding the laches defense meritorious.

The Beverly Hills section 2 subdivision in Houston was developed subject to covenants restricting land use to residential purposes. The Muses purchased their lot for $46,000 on November 17, 1983. Their deed and their title policy both mentioned the restrictions. Paul Muse also had actual notice of the restrictions. Before opening his business, he discussed the restrictions with Jose Cambiaso, a neighbor who was violating the same restriction. Not surprisingly, Mr. Cambiaso did not report Muse's plans to anyone charged with the duty of enforcing the restrictions.

Despite their knowledge of the restrictions, the Muses spent $15,000 repairing and remodeling the premises in early 1984 and then used the property solely as an appliance service and sales business known as L & P Sales and Service. They never used it as a residence. Mr. Muse testified the property was an eyesore when he purchased it, with abandoned cars in the driveway and a garage door needing repair. The remodeling consisted of placing windows in the face of the house, converting the garage into an office, and removing the garage doors and replacing them with a front that improved the appearance of the

premises. Signs were posted in front of the premises for the business. The business caused abnormal traffic in the neighborhood, such as 18-wheel trucks stopping at the premises. Up to six cars were often parked not only at the premises, but also along both sides of the street, microwave ovens were delivered to and picked up from the premises, and traffic often blocked the street.

In March or April of 1984, Mr. Muse was told at a Beverly Hills Civic Club meeting that members objected to his business operation. The club hired a maintainance company to handle the situation, but dropped it because of the expense. Then, on October 17, 1986, the club's attorney wrote the Muses threatening to sue if they continued violating the restrictions. They continued violating the restrictions.

Finally, the City was notified of the violation in August 1987, and it sued on June 14, 1988. The trial court granted a temporary injunction in July, enjoining the operation of the business until trial. Mr. Muse continued to operate the business, despite the temporary injunction.

In points of error one and two, the City asserts that the trial court erred in holding that laches applied because the City's enforcement of restrictions was a governmental function authorized by statute and by city ordinance, and laches cannot bar a city from performing a governmental function. See Tex.Local Gov't Code Ann. §§ 230.001, 230.003 (Vernon 1987) (authorizing city governments to enforce deed restrictions). The Muses contend, and the trial judge found, that the City's right to enforce deed restrictions is merely derivative of private rights, and therefore, is not a governmental function; that deed restrictions are not "elevated to the dignity of statutes" simply because the city may sue to enjoin violations; and that the city is therefore subject to the equitable defense of laches. We need not reach these issues because we find, that even if laches may be asserted against the City, no evidence supported that defense here.

In points of error three, four, and five, the City argues there was no evidence or

insufficient evidence to support the trial court's finding of an unreasonable delay by the City in bringing the lawsuit, and that the trial court erred in imputing to the City the knowledge of the subdivision residents concerning the Muses' activities. In points of error six and seven, the City argues that there was no evidence or insufficient evidence to support the trial court's finding of a good faith change in the Muses' position to their detriment in reliance upon the delay. We agree with all these contentions.

■ Laches is an affirmative defense, which the Muses had the burden to prove. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964). The two elements of laches are: (1) an unreasonable delay in asserting a legal or equitable right; and (2) a good faith change of position by the Muses to their detriment in reliance upon the delay. *Id.* When a party takes no steps to enforce its known rights until the other party has, in good faith, so changed its position that it cannot be restored to its former state, the delay becomes inequitable and may estop the assertion of the right. *Culver v. Pickens*, 142 Tex. 87, 91, 176 S.W.2d 167, 170–71 (1943). Thus, proof that the City knew of its rights is essential to a defense of laches. Here, the City sued in June 1988, 10 months after it learned of the violations, not an unreasonable delay. *See City of Fort Worth*, 388 S.W.2d at 403. The trial court, however, found that knowledge of subdivision residents in the spring of 1984 would be imputed to the City. We will accept this finding, although the City contends it should not be bound by the residents' knowledge.

Texas courts frequently have referred to applicable statutes of limitations to determine whether laches prevents granting equitable relief. *See Coleman v. Zapp*, 135 S.W. 730, 732, (Tex.Civ.App.1911), *aff'd*, 105 Tex. 491, 151 S.W. 1040 (1912); *Huggins v. Johnston*, 3 S.W.2d 937, 941 (Tex. Civ.App.—Waco 1927) *aff'd*, 120 Tex. 21, 35 S.W.2d 688 (1931); *Hayward v. Corpus Christi*, 195 S.W.2d 995, 1005 (Tex.Civ.App. —Waco 1946, writ ref'd n.r.e.).

■ In this case, however, the City is immune from the application of the limitation statutes, even though its actions may have been proprietary in nature. *See Brazos River Auth v. City of Graham*, 163 Tex. 167, 181–82, 354 S.W.2d 99, 109 (1961) (holding incorporated cities not barred by limitations); *City of El Paso v. Del Norte Golf and Country Club, Inc.* 614 S.W.2d 168, 170 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.) (holding immunity extends to proprietary functions). Thus, to establish laches against the City, appellants had to prove not only an unreasonable delay, but also that they had, in good faith, changed their position to their detriment because of the delay. *See City of Fort Worth*, 388 S.W.2d at 400.

■ Even assuming that laches can bar the City and that the residents' knowledge is imputed to the City, the Muses failed to show a good faith, detrimental change in their position in reliance on the City's delay in asserting its rights. Before they remodeled, the Muses had constructive and actual notice of the deed restrictions, which were recorded, were mentioned in their deed and in their title policy, and were known to them. *See Lee v. Powers*, 446 S.W.2d 938, 940 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ). The evidence of actual and constructive notice was undisputed. *See City of Fort Worth*, 388 S.W.2d at 404.

■ Muse contends that the Beverly Hills Civic Club was too slow to complain and points out that he told Mr. Cambiaso of his intent to violate restrictions. However, Mr. Cambiaso was not an officer or a member of the civic club and did not participate in its activities. Notice to him was not notice to the club. In March or April of 1984, only four to five months after Muse purchased the property, he was informed at a civic club meeting that his neighbors objected to his business. This was the earliest evidence of the club's knowledge of Muse's violations. By then, Muse had already finished his improvements. Muse does not contend that the nature or method of his improvements should have put the civic club on earlier notice that he meant to violate the restrictions.

Nor did any action or inaction by the civic club cause the Muses to spend their $15,000 or to start their business. The trial court found that "the appearance of the subdivision is that of an attractive residential subdivision;" "that the number and nature of the violations of the residential use restriction by other lot owners are not sufficient to lead a reasonable man to conclude that enforcement has been waived;" that "violations ... by other owners ... were not severe or were minor, insignificant or insubstantial;" that "violations ... by the defendants are no greater ... than those of businesses presently existing within the subdivision;" and that "the number and severity of the violations in the subdivision are not sufficient to constitute abandonment of the restrictions ... because the subdivision residents have consistently, with only one notable exception, enforced the restrictions against other violators." In short, there is no evidence of reliance, and none of good faith reliance, by the Muses.

 Laches does not apply where the defendant has acted in open and known hostility to a plaintiff's rights and has not been misled by the plaintiff's apparent acquiescence. *Arrington v. Cleveland,* 242 S.W.2d 400, 403 (Tex.Civ.App.—Fort Worth 1951, writ ref'd). The law does not demand the utmost exertion of diligence in repelling a hostile invasion of one's rights deliberately undertaken with full knowledge of all the facts. *Melton v. Miller,* 391 S.W.2d 568, 571 (Tex.Civ.App.—Houston 1965, no writ); *Allen v. Winner,* 389 S.W.2d 599, 600 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.). The Muses were persistent violators, who were not moved to comply by personal complaints from the civic club, nor by written threats of suit from an attorney, nor by a temporary injunction.

David Bergeron, an officer of the civic club in 1984 and 1985, after appellant was operating his business, testified that the civic club's policy was to leave businesses alone as long as the single-family residential character of the neighborhood was preserved. Certain letters to other residents in October of 1984 and in 1988 at-

tacked the display of signs only. However, this occurred months after the Muses had spent their money and opened their business; thus, they could not have relied on it. Moreover, the trial court found that the number and nature of other violations of the residential use restriction were insignificant, and not sufficient to suggest that enforcement had been waived. There are no trial court findings that the Muses were induced to do anything in reliance on their neighbors' acquiescence.

Finally, the Muses failed to prove that they changed their position to their detriment. After the Muses repaired and occupied the premises, their only expenses were for routine maintenance. Mr. Muse testified that the clean-up and maintenance costs would have been performed by anyone interested in reasonable upkeep of the premises, whether or not they were operating a business. Moreover, Mr. Muse did not segregate his expenses between the cost of clean-up and repairs and the cost of remodeling for business purposes. *See Arrington,* 242 S.W.2d at 403. Mr. Muse testified that he had done nothing to the premises that would prevent its use as a residence. No evidence showed that this was a particularly valuable business location. No evidence showed that the business would be hurt by moving to a new location. Evidence showed that the business had previously operated elsewhere, and that much business was done off the property. Because the Muses had the burden of proof on laches, their failure to prove injury or damage would be fatal to the defense. *Id.*

Points of error three through seven are sustained.

 In point of error nine, the City contends the trial court erred in refusing to award it attorney's fees.

The Texas Property Code provides:

In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorneys' fees, in addition to the party's costs and claim.

Tex.Prop.Code Ann. § 5.006(a) (Vernon 1984).

While the trial court did not prohibit the Muses from operating their business, it found they violated the restrictions and it permanently enjoined them from certain activities. This makes the City the prevailing party, and therefore, attorneys' fees are mandatory. *Inwood North Homeowners' Ass'n, Inc. v. Meier*, 625 S.W.2d 742, 743–44 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). Finally, our disposition on appeal gives the City the relief it sought and makes it a "prevailing party," regardless of the trial court's order.

Point of error nine is sustained.

■ In point of error 13, the City asserts there was insufficient evidence to support the trial court's conclusions that the harm to the Muses by an injunction outweighed the resulting benefit to the community, and that it was inequitable to enforce all of the residential deed restrictions against the Muses. We agree.

■ Before the Court balances equities, the disproportion must be great between the harm of an injunction to the Muses and the benefit of an injunction to the community. *Garden Oaks Bd. of Trustees v. Gibbs*, 489 S.W.2d 133, 134–35 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.). Mr. Muse testified that these were not major or structural improvements, and that they did not prevent use of the house as a residence. The Muses contend they had commercial good will from four and one-half years of operation, but the only evidence of that was Mr. Cambiaso's testimony, "His business is going to increase, it's not going to decrease over the years." Moreover, no evidence indicates the Muses enjoyed any significant business advantage from operating at this location. They had operated before at another location. No evidence indicated the business would be less successful at another location. Thus, there was insufficient evidence that the harm to the Muses would be great, and the benefit to the community would be small, from an injunction.

Point of error 13 is sustained.

The judgment is reversed, and the cause is remanded with instructions that the trial court enjoin the operation of the business and award attorney's fees to the City.