**William STEPHENS and Ray Jordan, Appellants,**

v.

**Wayne DOLCEFINO; KTRK Television, Inc.; Henry Florsheim; ABC, Inc.; and Steve Bivens, Appellees.[1]**

No. 01–00–00585–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 12, 2003.

Rehearing Overruled Oct. 2, 2003.

---

1. Appellants' brief indicates that CC Texas Holding Company is an appellee, but that party does not appear to have been served by citation.

Lloyd E. Kelley, Tammy Tran & Associates, Houston, TX, for Appellants.

David T. Moran, Jackson Walker L.L.P., Dallas, TX, for Appellees.

Panel consists of Justices NUCHIA and WILSON.*

---

* Justice Davie Wilson, who retired from the First court of Appeals on March 31, 2002, continues to sit by assignment for the disposition of this cause, which was submitted on March 18, 2002.

## OPINION ON MOTION
## FOR REHEARING

SAM NUCHIA, Justice.

Appellees have moved for en banc rehearing of the panel's opinion and judgment. The panel withdraws its opinion of August 8, 2002 and substitutes this opinion in its place; however, the disposition and judgment do not change. The motion for rehearing addressed to the en banc Court is denied as moot.

Appellants, William Stephens and Ray Jordan, appeal from a take-nothing summary judgment rendered on their claims against all appellees (together, "the KTRK parties"). We affirm the judgment in part, reverse it in part, and remand the cause.

### Background

At the time of the events underlying this suit, appellant Stephens was the Deputy Controller of the City of Houston; appellant Jordan was a Houston Police Department sergeant; appellee Wayne Dolcefino was an investigative reporter for appellee KTRK Television, Inc., which in turn was the licensee of KTRK TV, Channel 13 in Houston ("Channel 13"; not a party to this suit); appellee Steve Bivens was a KTRK researcher; appellee Henry Florsheim was KTRK's president and general manager; and the local KTRK station was an affiliate of appellee ABC, Inc.

During the summer of 1997, Dolcefino began investigating then City of Houston Controller Lloyd Kelley (also appellants' attorney in this suit) to determine Kelley's whereabouts during work hours, among other things.[2] As part of this investigation, Dolcefino sent Bivens to a two-day continuing legal education program held July 10–11, 1997 at a hotel in San Antonio, Texas ("the San Antonio CLE"). Besides Kelly, Stephens, Jordan, and then Houston Police Chief C.O. Bradford also attended the San Antonio CLE. Using a hidden "pager" camera, Bivens recorded Kelley's whereabouts at the San Antonio CLE.

The case arises out of Bivens's pager-camera recording of a conversation ("the courtyard conversation") among appellants, Kelley, and Chief Bradford at the July 10 morning break in an outdoor courtyard of the hotel at which the San Antonio CLE was held. The KTRK parties admit that the pager camera recorded some sounds, but claim that those sounds were ambient only and were not enhanced and that any sounds from the courtyard conversation in particular were incomprehensible. Appellants dispute the claim that the pager camera could not or did not record the courtyard conversation comprehensibly.

In August 1997, Channel 13 broadcast Dolcefino's report of the Kelley investigation. Specifically, on August 15, 1997, the television station broadcast footage record-

---

2. This investigation has spawned other litigation, as well. See *Dolcefino v. Randolph*, 19 S.W.3d 906 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (on appeal from 55th District Court, Harris County, in suit by Kelley and Cynthia Randolph for defamation surrounding investigation and broadcast of Kelley's actions (other than at the San Antonio continuing legal education seminar at issue here), reversing and rendering for KTRK-related defendants); *Randolph v. Jackson Walker L.L.P.*, 29 S.W.3d 271 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (on appeal from 127th District Court, Harris County, affirming order striking, under Tex.R. Civ. P. 13, Randolph and Kelley's pleadings against attorneys for KTRK-related defendants); *Dolcefino v. Randolph*, No. 14–00–00602–CV, 2001 WL 931112 (Tex.App.-Houston [14th Dist.] Aug. 16, 2001, pet. denied) (not designated for publication) (on appeal from 127th District Court, Harris County, reversing and rendering for KTRK-related defendants in suit for defamation and related torts (Kelley and Randolph) and wiretap-statute violations (Kelley only)).

ed at the San Antonio CLE. The broadcast footage contained no sound.

The sound from the pager-camera tape was eventually erased before trial and before being produced to appellants. The KTRK parties claim that the tape was recycled in the normal course of business, but appellants claim that the tape was intentionally spoliated.

Appellants sued the KTRK parties for violations of their privacy under Texas Civil Practice and Remedies Code chapter 123. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 123.001–.004 (Vernon 1997 & Supp.2003) ("the wiretapping claim");[3] negligence; negligent supervision of the individual defendants; conspiracy to commit the aforementioned torts; and intentional infliction of emotional distress ("IIED"). Appellants sought statutory damages, punitive damages, a permanent injunction, and attorney's fees and costs. Appellants' claims are based on the alleged non-consensual recording of sound from, not visual images of, the courtyard conversation.

**3.** As explained further below, appellants' invasion-of-privacy claim is limited in this appeal to this statute.

**4.** Appellants claim that the trial judge rendered summary judgment only (1) under rule–166a(i) and (2) on the ground that the KTRK parties never recorded any sound. That is a mischaracterization of the judge's order, which reads in pertinent part as follows:

> Additionally, the plaintiffs have asked this Court [to] take judicial notice of the February 8, 2000 order of the 127th District Court attached as exhibit b to the plaintiff's response. This Court takes notice of Judge Wood's order.
>
> *In their summary judgment, the defendants claim that not one word uttered by any of the participants to the conversation of which plaintiffs complain was ever recorded by any defendant. Indeed, this is the foundation of the "no evidence" component of their summary judgment motion.* In response to this claim, the plaintiffs requested certain relief. Plaintiffs asked this Court to take judicial notice of the order of the 127th

In a joint motion, the KTRK parties moved simultaneously for rule–166a(c) and rule 166a(i) summary judgment against all appellants' claims and against the requested exemplary damages. After sustaining some of the KTRK parties' objections to appellants' summary judgment evidence, the trial judge granted the KTRK parties' summary judgment motion without specifying grounds or stating whether he was granting the rule–166a(c) or rule–166a(i) portion of the motion.[4] Appellants moved for reconsideration/new trial based upon "new evidence," which motion the trial judge denied after an evidentiary hearing.

## Discussion

### A. Standard of Review and Burden of Proof

█ We follow the usual standard of review for an order granting summary judgment without specifying grounds. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). The KTRK parties moved

> [District Court] referred to above or compel the defendants to produce the pager camera for testing and grant a continuance to allow that testing. As noted, this Court has taken judicial notice of Judge Wood's order. The [plaintiffs'] motion to compel and the motion for continuance are therefore denied (by separate orders dated March 15, 2000).
>
> After considering the summary judgment, the response, the arguments of counsel, the Court grants the defendants' motion for summary judgment. Therefore, plaintiffs shall take nothing by reason of their claims herein. All costs shall be taxed against the plaintiffs for which execution shall issue. All other relief not expressly granted herein is denied.

(Italicized portions relied on by appellants.) The quoted portion, on which appellants rely, concerned a preliminary, evidentiary ruling, not the ultimate ruling. The remainder of the quotation shows that the trial judge did not specify grounds for the ultimate ruling.

for summary judgment under both rules– 166a(c) and 166a(i).[5] We thus apply the standard of review appropriate to each type of summary judgment. *See* TEX.R. CIV. P. 166a(i) (no-evidence summary judgment), 166a(c) (traditional summary judgment); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (166a(i) standard); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997) (166a(c) standard).

## B. Statute of Limitations

The KTRK parties moved for rule–166a(c) and rule–166a(i) summary judgment on the ground of limitations. In issue 10, appellants claim that summary judgment was improperly rendered on this ground.

The parties agree that the two-year statute of limitations applies to all of appellants' causes of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 2002) (suits for personal injury); *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432,

435 n. 1 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (negligence, civil conspiracy); *Collins v. Collins*, 904 S.W.2d 792, 804 (Tex.App.-Houston [1st Dist.] 1995) (state wiretap statute), *writ denied*, 923 S.W.2d 569 (Tex.1996); *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 211 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (IIED). They also agree that all appellants' causes of action arose out of the July 10, 1997 filming of the courtyard conversation, that Stephens filed suit on August 26, 1999, and that Jordan first joined that suit on September 27, 1999.

Limitations is an affirmative defense on which the KTRK parties had the burden of proof. *See* TEX.R. CIV. P. 94; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex.1988). Only a rule–166a(c) summary judgment could thus have been rendered on this ground. *See* TEX.R. CIV. P. 166a(i); *Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). We review accordingly.

■■■ Appellants pled the discovery rule by second supplemental petition.[6] It

---

**5.** In issue 17, appellants claim that the trial judge erred in "considering conclusory no-evidence motion for summary judgment." However, in support of this issue, appellants refer only to page five of their brief, which is simply the brief's discussion of the summary judgment burden of proof and standard of review. Other than saying "[the KTRK parties'] no-evidence motion was purely conclusory," that page offers no argument, analysis, or record citation. Issue 17 is thus waived for inadequate briefing. *See* TEX.R.APP. P. 38.1(h); *Franz v. Katy Indep. Sch. Dist.*, 35 S.W.3d 749, 755 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

**6.** The KTRK parties claim that the February 29, 2000 second supplemental petition was filed six days after the summary judgment hearing, thus making the supplement (and appellants' discovery-rule pleading) late. This claim is somewhat misleading about the sequence of events. The second supplemental

petition was filed on February 29, 2000, six days after the hearing was due to have been held (February 23, 2000). Either the summary judgment hearing was not held on February 23, 2000 or, if it was held, the judge allowed the parties more time to brief. One of these two alternatives necessarily happened for the following reasons. First, the summary judgment order recognized that a telephone hearing on at least related issues took place on March 16, 2000. A hearing postponed until March 16 would have made appellants' supplement timely. *See* TEX.R. CIV. P. 63 (amended pleadings may generally be filed without leave of court more than seven days before trial); *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex.1988) (summary judgment proceeding is considered "trial" for purposes of rule 63). Second, the KTRK parties' summary judgment reply, which objected to the lateness of appellants' discovery-rule pleading, was not filed until March 3, 2000, nine days after the original

was thus the KTRK parties' burden to prove the claims' accrual date and conclusively to negate the discovery rule. *See Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990). "A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998). The discovery rule defers a cause of action's accrual date if the wrongful act and resulting injury were inherently undiscoverable when they occurred, but may be objectively verified. *S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex.1996). To be inherently undiscoverable, an injury must be unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.*

The KTRK parties' summary judgment motion asserted that (1) the alleged torts occurred July 10, 1997 and (2) the discovery rule did not apply because (i) the alleged injury (invasion of privacy) was neither inherently undiscoverable nor objectively verifiable and (ii) the August 15, 1997 broadcast of footage from the San Antonio CLE defeated the discovery rule.

In support, the KTRK parties produced the following summary judgment evidence:

- On August 15, 1997, the KTRK parties broadcast a news report about Kelley's attendance at the San Antonio CLE.
- The specific footage of the courtyard conversation was never broadcast, but excerpts of the pager-camera footage made at the San Antonio CLE—including footage showing Kelley and Stephens (but not Jordan) entering the hotel courtyard during the July 10 morning break—were broadcast on August 15, 1997.
- Stephens saw the August 15, 1997 broadcast showing surveillance footage from the San Antonio CLE, including the footage, shot from the hotel courtyard, of his and Kelley's entering the courtyard.
- Stephens testified that, after seeing the August 15 broadcast, he did not then inquire about the tape's contents.
- Kelley also saw the August 15, 1997 broadcast showing surveillance footage from the San Antonio CLE.

In response, appellants rely on the following: [7]

hearing date. Third, the trial judge expressly recited that he considered all summary judgment pleadings, including the KTRK parties' March 3 reply, in his ruling. We also note that, although the KTRK parties objected to the supplement and claimed surprise, the record contains no ruling on that objection. Thus, even if the second supplemental petition had been untimely, which it does not appear to have been, we would nevertheless presume the trial judge considered the supplement, there being nothing in the record to the contrary. *See Goswami,* 751 S.W.2d at 490.

7. In addition to the facts recited below, appellants rely on the alleged facts that "[The KTRK parties] concede that there was no way for Appellants to obtain a copy of the 'spy' tapes absent their production in the *Randolph* case" and "[the KTRK parties] never revealed they possessed film of Appellants' conversation until they were forced to produce it in discovery in the 127th [District Court] case." Because appellants give no record citation to support these alleged facts, we will not consider them. Additionally, appellants rely on testimony from their own summary judgment affidavits, but we may not consider this testimony because the trial judge granted the KTRK parties' objections to this testimony before rendering summary judgment. One of the KTRK parties' objections was that neither affidavit was produced in discovery, although both were dated over three or four months before summary judgment was sought. The trial judge's granting the objections without specifying why was thus tantamount to striking the affidavits. On appeal, appellants do not complain of the judge's ruling effectively striking their summary judgment evidence.

- The KTRK parties stipulated that they first produced the videotape from the San Antonio CLE on August 13, 1999, in response to discovery requests in *Randolph et al. v. Dolcefino et al.,* Cause No. 97-45492, 127th District Court, Harris County.
- Jordan was not shown in the broadcast footage from the San Antonio CLE.
- Stephens testified that he did not realize when he saw the broadcast that the San Antonio CLE footage was taken from a hidden camera.[8]

The KTRK parties undisputedly proved that the alleged torts occurred on July 10, 1997. However, we hold that the KTRK parties did not conclusively negate the discovery rule. The filmclip taken at the San Antonio CLE was broadcast without sound. The courtyard was a public place, and, as discussed below, a videotape without sound in the courtyard would not have violated the law. In contrast, a surreptitious audiotaping of conversations in the courtyard could have violated the law, depending on the circumstances. Although Stephens was on notice that he had been videotaped once he saw the August 15 broadcast, he could not reasonably have been expected to know that the videotape included sound. Based solely on the KTRK parties' summary judgment evidence, why would a reasonable person in Stephen's position presume that he had been audiotaped without permission by a stranger to his conversations (potentially an offense), when the evidence showed only that he had been videotaped in a public place (not an offense)? Furthermore, the KTRK parties did not prove when, if ever, Jordan saw the broadcast, and, in any event, that broadcast showed only Kelley and Stephens (not Jordan) entering the courtyard.

At oral argument, the KTRK parties relied on *Dolcefino v. Randolph,* in which the Fourteenth Court of Appeals held that limitations barred Kelley's wiretapping claim against KTRK-related entities based on audio recordings of his conversation with Chief Bradford at the San Antonio CLE. *See id.,* No. 14-00-00602-CV, slip op. at 18-19, 2001 WL 931112 (Tex.App.-Houston [14th Dist.] Aug. 16, 2001, pet. denied) (not designated for publication). However, the *Randolph* defendants produced uncontroverted proof that Kelley actually discovered the next day that sound from that conversation had been recorded. *See id.,* slip op. at 19. The KTRK parties did not produce such evidence here. Furthermore, Kelley is not a plaintiff in this suit, and his knowledge would not necessarily show appellants' knowledge. *Randolph* thus does not control.

■ On rehearing, the KTRK parties argue that they negated the discovery rule as a matter of law because whether the pager camera recorded the courtyard conversation audibly is disputed and cannot be objectively verified, as the audiotaped portion no longer exists. *See S.V.,* 933 S.W.2d at 15 (holding that "the bar of limitations cannot be lowered for no other reason than a swearing match between parties over facts"). We disagree. First, the sound from the videotape of the San Antonio CLE cannot be reviewed because the KTRK parties erased it—they say in the usual course of business, appellants say as an act of spoliation. In either case, a defendant cannot unilaterally destroy the principal object needed to verify a wrong

---

We also note that the struck testimony does not say exactly what appellants' brief claims that it does.

8. Appellants' claim that they both testified to this, but only Stephens did.

objectively and then argue that the plaintiff cannot objectively verify the wrong because that object is missing. Additionally, as discussed further below, the applicable wiretapping statute creates a cause of action for intercepting *or attempting* to intercept certain communications. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 123.002(a). When appellants later obtained the pager camera and tested it, the results of that test (albeit disputed) showed that the camera was capable of recording similar sounds under allegedly similar conditions, thus raising a fact issue on whether the alleged wrong could be objectively verified.[9]

Accordingly, we hold that the KTRK parties did not conclusively negate the discovery rule. Thus, summary judgment could not properly have been rendered on that ground.

We sustain issue 10.

## C. Laches

■ The KTRK parties moved for rule–166a(c) and rule–166a(i) summary judgment on the ground of laches. In issue 11, appellants claim that summary judgment was improperly rendered on this ground.

■ Laches is an affirmative defense on which the KTRK parties had the burden of proof. *City of Houston v. Muse*, 788 S.W.2d 419, 422 (Tex.App.-Houston [1st Dist.] 1990, no writ). Only a rule–166a(c) summary judgment could thus have been rendered on this ground. *See* TEX.R. CIV. P. 166a(i); *Young Refining Corp.*, 46 S.W.3d at 385. We review accordingly.

■ To establish laches conclusively, the KTRK parties had to show (1) appellants' unreasonable delay in asserting a legal or equitable right and (2) the KTRK

parties' good faith change of position, to their detriment, in reliance on appellants' delay. *Muse*, 788 S.W.2d at 422. The only evidence that the KTRK parties offered was Dolcefino's affidavit testimony that "[d]efendants are prejudiced by the delay in Plaintiffs' filing this suit because of potentially faded memories and the inability to collect all evidence necessary to defend the claims asserted." This is not evidence of any good-faith change in position by the KTRK parties to their detriment. Accordingly, summary judgment could not have been granted on that ground.

We sustain issue 11.

## D. The "Derivative Claims": Intentional Infliction of Emotional Distress, Negligence (and Negligence Per Se), Negligent Supervision, and Civil Conspiracy

■ The KTRK parties moved for rule–166a(c) and rule–166a(i) summary judgment on all elements of intentional infliction of emotional distress, negligence (including negligence per se), negligent supervision, and civil conspiracy. The KTRK parties also moved (1) against the negligent—supervision claim on the ground that it was not a separate cause of action from negligence; (2) against all four "derivative" claims because the claim on which the derivative claims were based (privacy invasion) allegedly failed; and (3) against the civil conspiracy claim because a corporate defendant could not conspire with its own agents.

Appellants' sole briefing on any of these claims appears on two pages of their brief. There is no realistic attempt to discuss the four claims' elements separately. There is no discussion of whether negligent supervision could exist separately from negligence

---

9. We discuss the pager-camera test, and the KTRK parties' procedural objections to its

consideration for summary judgment, later in this opinion.

or of whether a corporate defendant could conspire with its own agents. There is no citation to any authority. The only record citation is to one page of the KTRK parties' summary judgment motion. Although appellants also cite to Appendices A and B of their brief, nothing shows that these appendices contain materials that are part of our record, and the KTRK parties claim that the materials are not.

Accordingly, we hold that appellants waived these challenges for lack of adequate briefing. See Tex.R.App. P. 38.1(h); *Franz*, 35 S.W.3d at 755. We thus overrule issues 12 and 13, as well as any of the derivative—claim arguments that could be construed as being encompassed by issue three.

### E. Exemplary Damages

The KTRK parties moved for rule–166a(c) and rule–166a(i) summary judgment against appellants' request for exemplary damages on the grounds that (1) no evidence existed on the elements of fraud, malice, ill will, reckless disregard, or the like and (2) the federal and state constitutions prohibited exemplary damages. *See* U.S. Const. I, XIV; Tex. Const. art. I, § 8.

■■■ In issue seven, appellants state their challenge to the exemplary—damages summary judgment ground as follows: "Whether the trial court erred in granting Appellees' motion for summary judgment because the Constitution does not bar exemplary damages?" That issue refers to page 37 of the brief, but that page does not concern exemplary damages or the First Amendment, and appellants' briefs do not contain any argument in support of this issue. Accordingly, we hold that appellants waived issue seven by inadequate briefing. *See* Tex.R.App. P. 38.1(h); *Franz*, 35 S.W.3d at 755. Even if this

issue were adequately briefed, we would still affirm because appellants do not challenge the alternate ground for summary judgment on exemplary damages, *i.e.*, no evidence of fraud, malice, ill will, reckless disregard, or the like. Because any error on that alternate ground is unassigned, we would affirm the summary judgment prohibiting exemplary damages in any event. *See Garcia v. Nat'l Eligibility Express, Inc.*, 4 S.W.3d 887, 889 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

We overrule issue seven.

### F. The Wiretapping Claim

The KTRK parties moved for rule–166a(c) and rule–166a(i) summary judgment against the wiretapping claim on (1) all elements of the claim and (2) the ground that the KTRK parties' actions related to newsgathering activities, which allegedly precluded liability and damages under the federal and state constitutions. *See* U.S. Const. I, XIV; Tex. Const. art. I, § 8. In issues one, two, four, five, six, 16, and parts of issue three, appellants argue that the trial judge erred in rendering summary judgment against the wiretapping claim.

#### 1. Preliminary Matter

■■ For purposes of our review of this summary judgment, appellants' privacy-invasion claim stands or falls under Texas Civil Practice and Remedies Code chapter 123. *See* Tex. Civ. Prac. & Rem.Code Ann. § 123.001 .004. Appellants' "live" petition alleged privacy invasion claims under the common law, "the Constitution," and "laws enacted" to protect privacy rights, without specifying which constitutional or statutory provisions. However, appellants conceded in their summary judgment response that their cause of action for privacy invasion

was made solely under chapter 123.[10] *Cf. Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex.2001) (holding that party's summary judgment response and counter-motion for summary judgment contained clear, unequivocal, and binding judicial admission). By this concession, appellants abandoned all privacy-invasion claims, except the claim asserted under chapter 123, before summary judgment was rendered. Even if appellants had not abandoned their other privacy-invasion claims, the trial judge would properly have rendered summary judgment on those claims under rule–166a(i) because appellants did not "point out evidence that raises a fact issue on the challenged elements." *See* Tex.R. Civ. P. 166a(i), comment to 1997 amendment.

We thus overrule issue eight, as well as all argument under any of appellants' issues concerning invasion of privacy arising under the common law, either constitution, or any state or federal statute other than chapter 123, because those claims were not before the trial court when it rendered summary judgment and are thus not before us or, alternatively, were properly disposed of under rule–166a(i).

### 2. The Texas Statutes

**§ 123.002. Cause of Action.**

(a) A party to a communication may sue a person who:

(1) *intercepts, attempts to intercept, or employs or obtains another to intercept or attempt to intercept the communication;* ....

Tex. Civ. Prac. & Rem.Code Ann. § 123.002(a) (emphasis added).

**§ 123.001. Definitions.**

In this chapter:

(1) *"Communication" means speech uttered by a person* or information including speech that is transmitted in whole or in part with the aid of a wire or cable.

(2) *"Interception" means the aural acquisition of the contents of a communication through the use of an electronic, mechanical, or other device that is made without the consent of a party to the communication,* but does not include the ordinary use of:

(A) a telephone or telegraph instrument or facility or telephone and telegraph equipment;

(B) a hearing aid designed to correct subnormal hearing to not better than normal;

(C) a radio, television, or other wireless receiver; or

(D) a cable system that relays a public wireless broadcast from a common antenna to a receiver.

Tex. Civ. Prac. & Rem.Code Ann. § 123.001 (emphasis added).

### 3. Discussion

#### a. Judicial Notice of Judge Wood's Order

 In issues one, two, and 16, appellants claim that the trial judge erred in rendering summary judgment on the wiretapping claim because (1) the trial judge took judicial notice of an order by Judge Wood in Lloyd Kelley's lawsuit in the 127th District Court of Harris County, (2) Judge Wood's order allegedly recited that the KTRK parties had spoliated the pager-camera tape of the courtyard conversation by deleting its sound, and (3) that spolia-

**10.** In that pleading, appellants admitted that their privacy-invasion claim "is simply a statement of the cause of action afforded Texas under C.P.R.C. 123," and they expressly disavowed any privacy-invasion claim under the common law, the Texas Penal Code, or federal statute.

tion finding sufficed to defeat a rule–166a(i) summary judgment as a matter of law and to raise a fact issue on a rule–166a(c) summary judgment. The KTRK parties dispute that Judge Wood's order found spoliation. The KTRK parties do not dispute that they deleted the sound from the videotape at issue, but they claim that they did so before any suit's filing and solely under their usual business practice of recycling tapes.

Judge Wood's order read in pertinent part as follows:

> After considering the testimony and evidence in the sanctions hearing [on plaintiffs' motion] concluded in December, the relief requested is granted in part and denied in part as to the issue of the sound on the 8mm tapes. . . .
>
> 1. 8mm tapes. Plaintiffs' request to strike defendants' [KTRK-related parties] pleadings for taping over prior 8mm surveillance tapes during July and August of 1997 is denied. The court finds that the acts complained about were prior to suit. A jury is entitled to consider this conduct as part of the evidence in the case.
>
> From the evidence submitted by plaintiffs, the court finds that the legal threshold has been met to entitle plaintiffs to present this evidence at trial. A decision by the Court on whether to

submit an instruction to the jury on spoliation, and, if so, what wording to submit, should be decided at the close of evidence based on all the evidence admitted. All counsel should be prepared to discuss the correct wording of any such instruction at the time of the pretrial conference in the case.

This is not a ruling that the KTRK parties "intentionally spoliated" the tapes' sound, but is instead a ruling that, based on the evidence presented to Judge Wood, the plaintiffs had made a threshold showing entitling them to present spoliation evidence to the jury in that case. Judge Wood expressly reserved ruling on whether to submit a spoliation instruction. Thus, Judge Wood's order, by itself, could not defeat the rule–166a(i) summary judgment as a matter of law or raise a fact issue on the rule–166a(c) summary judgment.[11]

We overrule issues one, two, and 16.

### b. Fact Issues on Wiretapping Claim

In issue four and part of issue three, appellants claim that the trial judge erred in rendering rule–166a(c) and rule–166a(i) summary judgment against their wiretapping claim because material fact issues existed.

---

11. Judge Wood's order is not exactly what the KTRK parties claim, either. They claim that the order

> did not make a finding of spoliation . . . Judge Wood specifically declined to grant a request (by litigant Kelley) to sanction KTRK . . . Rather, Judge Wood accepted KTRK's evidence and concluded that the 8mm pager camera tape was recycled before trial. . . . Indeed, the trial court found the essential facts that preclude a finding of spoliation—that the tape was recycled "prior to suit."

Judge Wood did not find that the tape was "recycled," however, but simply that the

sound was deleted from it before suit. The KTRK parties conceded in their response to appellants' spoliation motion in the current lawsuit that "in limited circumstances, a duty to preserve evidence may arise where a party either has notice of a potential claim or reasonably expects litigation." Judge Wood's finding thus did not exonerate the KTRK parties on spoliation or, as they claim, "preclude a finding of spoliation." In fact, Judge Wood found only that the plaintiffs in that case had made a threshold showing of spoliation and that the judge had not yet ruled out instructing the jury on spoliation.

■ Appellants' wiretapping claim had the following elements: (1) the KTRK parties intercepted or attempted to intercept, (2) by using an electronic, mechanical, or other device, (3) the contents of speech uttered by appellants (4) without the consent of at least one party to appellants' conversation.[12] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 123.001(a)(1), 123.002(a)(1). The parties dispute only the claim's first, third, and fourth elements. For ease of discussion, we discuss the elements out of order.

### Contents of Appellants' Speech

■ The KTRK parties' position here and below was that no discernable speech was recorded, but only garbled or ambient noise.[13] However, at the hearing on appellants' motion for reconsideration/new trial, the trial judge admitted into evidence an audio and video test recording from the very pager camera at issue here. That test tape clearly recorded—when appellants tested it under noisy conditions in public areas—conversations at distances

even further from the distance at which Bivens recorded the courtyard conversation. The trial judge ruled that he would consider evidence from the reconsideration/new trial hearing to be part of the summary judgment record. This evidence alone raises a fact issue on whether the pager camera could or did intercept and record the actual contents of appellants' courtyard conversation.[14]

■ On rehearing, the KTRK parties argue that we cannot consider the pager-camera test tape because it was admitted after the trial judge had rendered summary judgment.[15] *See Chapman v. Mitsui Eng'g & Shipbuilding Co., Ltd.,* 781 S.W.2d 312, 315 (Tex.App.-Houston [1st Dist.] 1989, writ denied). However, a trial judge may accept summary judgment evidence filed late, even after summary judgment, as long as he affirmatively indicates in the record that he accepted or considered it. *Oryx Energy Co. v. Union Nat'l Bank,* 895 S.W.2d 409, 412–13 n. 3 (Tex.App.-San Antonio 1995, writ denied);

12. Appellants claim that lack of consent is an affirmative defense, rather than an element of a chapter 123 wiretapping claim. The authority appellants cite does not discuss the burden of proof, however, and concerns consent to search in the criminal context, not lack of consent under a wiretapping statute. *See United States v. McCann,* 465 F.2d 147, 157 (5th Cir.1972). In any event, given our disposition, we need not decide this question.

13. On appeal, the KTRK parties also argue for the first time that chapter 123 applies only to speech that is transmitted by wire or cable. Even if this interpretation is correct, which we do not decide, the KTRK parties waived the argument by not asserting it as a summary judgment ground. *See McConnell v. Southside Ind. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

14. In issue 14, appellants claim that the trial judge erred in granting summary judgment without first allowing them to test the pager camera "to see if it could record voices under similar conditions as when originally operat-

ed" by the KTRK parties and in "ignor[ing] a test of that same [pager] camera ordered by the 127th District Court." First, this issue is waived because no argument supports it. *See* TEX.R.APP. P. 38.1(h); *Franz,* 35 S.W.3d at 755. Second, appellants had asked the trial judge to take judicial notice of Judge Wood's order *or* to grant a continuance for testing the pager camera. The trial judge opted for the former. There is no error. Third, the trial judge admitted the pager camera's test results as part of the summary judgment record, curing any possible error. For all these reasons, we overrule issue 14.

15. At the new trial/reconsideration hearing, appellants also presented oral testimony, which the KTRK parties argue on rehearing is incompetent evidence. *See* TEX R. CIV. P. 166a(c) ("No oral testimony shall be received at the [summary judgment] hearing."). We need not decide the matter because we do not rely on that testimony.

*see also McMahan v. Greenwood*, 108 S.W.3d 467, 500 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.) (recognizing rule in *Oryx* ); *Farmer v. Ben E. Keith Co.*, 919 S.W.2d 171, 176 (Tex.App.-Fort Worth 1996, no writ); Timothy Patton, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 7.06[1] (3rd ed.2002) [hereinafter "Patton"] (noting rule in *Oryx* ); *cf. John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 88 n. 4 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (considering on appeal ground asserted in motion to reconsider summary judgment ruling, when trial court had granted movant's request to consider such ground).

 The KTRK parties argue that this exception does not apply for three reasons. First, they claim that the trial judge did not affirmatively indicate that he accepted the tape as summary judgment evidence. Although the trial judge first admitted the videotape for "purposes of this hearing only," he then ruled that "[t]he court *will include the evidence offered today in the summary judgment record.* The court, *even taking this evidence into the record,* denies the Plaintiff's motion for new trial." (Emphasis added.) The KTRK parties did not object. This statement shows that the trial judge accepted the tape as belatedly offered summary judgment evidence before effectively reaffirming his earlier ruling. Second, the KTRK parties claim that appellants did not argue that the tape was summary judgment evidence. But appellants argued that the pager-camera test tape raised fact issues precluding summary judgment. Third, citing a well-

known treatise, the KTRK parties argue that the trial judge's ruling had to be written. *See* Patton § 7.06[1] ("Thus, the efficacy of a post-judgment motion to preserve a complaint for appellate review depends upon whether the trial court affirmatively considers the new grounds and proof as memorialized by a written order."). Patton's statement is understandable because it was based on *Oryx*, which had a written order. *See Oryx*, 895 S.W.2d at 412 n. 3. However, the *Oryx* court did not hold that this type of order must always be written; [16] we have found no authority establishing such a blanket requirement, even though most orders are written; and at least one court has considered an oral ruling. [17] Therefore, the trial judge's oral ruling sufficed.

### Intercept or Attempt to Intercept

The KTRK parties' rule–166a(c) summary judgment motion relied on Dolcefino's and Bivens's affidavit testimony that (1) they did not intend to record anyone's private conversations at the San Antonio CLE, (2) the pager camera could record only ambient sounds because its audio capability was less than that of the human ear, (3) no audio-enhancing equipment was used on the pager camera, and (4) the KTRK parties' investigative unit had no use for the ambient sound that appellants claimed that the pager camera had recorded. The KTRK parties' rule–166a(i) summary judgment motion asserted that there was no evidence that they attempted to or did record anything with the pager camera.

---

16. *See Oryx*, 895 S.W.2d at 412 n. 3.

17. *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 47 n. 19 (Tex.App.-Fort Worth 2002, no pet.) (in reviewing summary judgment ruling, considering post-judgment evidence submitted with new trial or reconsideration motion because hearing record showed that trial judge had admitted and "clearly considered" that evidence "in reevaluating whether its summary judgment ... was proper," even though judge had also signed order denying motion to supplement summary judgment record).

We hold that there was evidence raising a fact issue on this element. First, given the parties' conflicting evidence on whether the pager camera could record conversations clearly under allegedly similar conditions, and given Bivens's testimony that he could hear only a few words of the courtyard conversation with his "bare" ears, a factfinder might disbelieve the KTRK parties' further evidence that the pager camera was not enhanced for sound. That is, there is a fact issue on whether the pager camera was so enhanced.

Second, appellants produced evidence that (1) Bivens stood within feet of appellants, Kelley, and Chief Bradford, although our review of the courtyard tape shows that the pager camera could record visual images at further distances; (2) Dolcefino considered the pager camera's audiotape to be "potentially important" for confirming what Bivens thought he overheard in the courtyard conversation, which implicated a "breaking story"; (3) Bivens and Dolcefino admitted that they listened to the San Antonio tape to determine whether they could understand the courtyard conversation; and (4) Dolcefino tried to have the tape's sound enhanced to determine whether the conversation could be understood. Viewed in the appropriate light, these facts raise an inference that the KTRK parties attempted and intended to use, or did use, the pager camera to intercept sound from the courtyard conversation.

### Without Consent

The KTRK parties argue here, as they did below, that appellants implicitly consented, within the meaning of chapter 123, by speaking in a public place where they did not have an objective expectation of privacy.[18] In support, the KTRK parties presented evidence that the courtyard was a crowded public place and that appellants, Kelley, and Chief Bradford stood next to the buffet table, which "plenty" of people visited.

However, The KTRK parties' evidence indicated that there was a din of voices in the courtyard. Apparently because of that din, Bivens testified that he stood only five to seven feet from the four men, yet overheard "with [his] naked ear" only "a few words that were spoken." Bivens did not claim to have heard the entire conversation, despite his proximity. Stephens testified that the four men spoke in a "normal or normal to low" conversational tone, and Jordan testified that the four men stood

---

18. Appellants rely on the statute's plain language to argue that chapter 123 does not require an expectation of privacy, but instead requires nothing less than express consent. *Compare* Tex. Civ. Prac. & Rem.Code Ann. § 123.01(2) (" 'Interception' means the aural acquisition . . . without the consent of a party to the communication . . . .") *with* Tex. Penal Code Ann § 18.20(2) (Vernon Supp.2002) (" 'Oral communication' means an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception."). They also rely on *Kotrla v. Kotrla,* but this case merely paraphrases the statute without holding as appellants claim. *See* 718 S.W.2d 853, 855 (Tex. App.-Corpus Christi 1986, writ ref'd n.r.e.). Of course, generally speaking, consent can also be implicit. *See Fordyce v. City of Seattle,* 840 F.Supp. 784, 789, 792–93 (W.D.Wa.1993) (under Washington wiretap statute requiring consent, reviewing for expectation of privacy), *vacated on same issue on procedural grounds,* 55 F.3d 436, 440–42 (9th Cir.1995), *on remand,* 907 F.Supp. 1446 (W.D.Wa.1995); *see also* Tex. Penal Code Ann § 18.20(4) (defining "electronic, mechanical, or other device" within the meaning of the criminal wiretap statute to mean device used for "nonconsensual interception."). Appellants' reply brief even acknowledges that "[g]enerally, 'expectation of privacy' is equated with consent. . . ." We need not decide the matter, however, because we hold below that, even under the KTRK parties' interpretation equating consent with a reasonable expectation of privacy, a fact issue exists.

close together so that they "wouldn't have to talk loudly." Dolcefino testified that he was interested in enhancing the tape's sound because, from the few words that Bivens thought that he had overheard, Dolcefino thought Chief Bradford might have been discussing with Kelley an on-going investigation that involved Kelley. If that topic was being discussed,[19] a reasonable inference is that the participants would not have wanted to broadcast that discussion.

We have viewed the videotape, which shows the following: (1) the buffet table was along one of the courtyard's walls, not in the center; (2) the four men stood within a foot or two of each other and, as a group, within a few feet of a corner of the courtyard that was to the side of the buffet table; (3) no one else stood on that side of the four men or was seen approaching them on that side; (4) although they stood close to the buffet table, Chief Bradford, who was the closest of the four to the table, stood mainly with his back to the table; and (5) Stephens at times looked around while the men spoke.

Viewed in the appropriate light, a fact-finder could reasonably infer from all of the above facts[20] that appellants, Kelley, and Chief Bradford were speaking in a tone that could objectively be considered private, that they did not intend to be audible, and that might not actually have been fully audible, given (1) their location in the courtyard, (2) the manner in which they were standing there, (3) Stephen's looking around periodically, (4) the din around them, and (5) the conversation's alleged, possible content. A fact issue thus exists on whether, as the KTRK parties claim, appellants implicitly consented by speaking in a place and manner for which there was no objective privacy expectation.

■■■ We distinguish the cases on which the KTRK parties rely because their facts touching on a privacy expectation differed materially.[21] We decline to adopt a rule

**19.** We do not state that was this topic was actually discussed; we merely note Dolcefino's testimony for purposes of determining whether a fact issue exists.

**20.** Appellants also rely on material other than that discussed here, but we do not rely on that material because it was either struck, came from a pleading, was not part of the record, did not say exactly what appellants' brief represents, or is unnecessary to our disposition, given the evidence discussed.

**21.** *See Fordyce*, 840 F.Supp. at 792–93 (holding no privacy expectation existed when plaintiff, using "readily apparent recording device" at close range on sidewalk during public demonstration, recorded voices—audible to passersby—of woman and her nephews, even after woman had told plaintiff to cease); *Wilkins v. Nat'l Broad. Co.*, 71 Cal.App.4th 1066, 84 Cal.Rptr.2d 329, 336–37 (1999, review denied) (holding no intrusion into private place when two defendant reporters, who posed as potential investors, met with company representatives; reporters brought two others with them, and the representatives did not question two guests' presence; representatives, reporters, and guests sat at table close to other tables on crowded restaurant patio; table was not secluded; representatives spoke freely in sales pitch, even when waiters came by; representatives did not conduct themselves as if information was private and admitted providing same sales pitch to hundreds of other potential investors; and reporters surreptitiously recorded conversation); *Agnew v. Dupler*, 553 Pa. 33, 717 A.2d 519, 524 (1998) (holding no reasonable expectation of privacy existed when plaintiff spoke to one officer in second officer's presence, then to second officer in first officer's presence, in a squadroom whose door was open, allowing plaintiff's voice to be heard without intercom or amplification down hall, where defendant was listening in lighted office to squadroom conversations on intercom); *Mark v. Seattle Times*, 96 Wash.2d 473, 635 P.2d 1081, 1094–95 (Wa.1981) (holding no privacy invasion when defendant reporter videotaped plaintiff through window, when place where reporter stood was open to public and view was visible to passersby).

that conversations conducted in public, outside areas are per se devoid of any privacy expectation. *See Fordyce v. City of Seattle,* 840 F.Supp. 784, 793 (W.D.Wa. 1993) ("This decision does not mean that there could *never* be a private conversation in a public place (for example, in tones not audible to third persons), or that surreptitious recording without consent is beyond the reach of legislation.") (emphasis in original), *vacated on same issue on procedural grounds,* 55 F.3d 436, 440–42 (9th Cir.1995).

Accordingly, we will sustain issue four and the corresponding part of issue three if the trial judge also erred in granting summary judgment on the ground that the KTRK parties' actions were protected by the First Amendment (discussed below).

### c. First Amendment Defenses

■ In issues five and six, appellants claim that the trial judge erred in rendering rule–166a(c) and rule–166a(i) summary judgment against the wiretapping claim on the ground that the federal Constitution's First Amendment, and the state Constitution's Article One, Section Eight, precluded liability and damages.[22] *See* U.S. CONST. amend. I; TEX. CONST. art. I, § 8.

■ The basic rule established (or noted in dictum) by the cases on which the KTRK parties rely is that, when a media defendant *lawfully* obtains truthful information about a matter of public significance, the First Amendment prohibits the State from punishing the information's publication absent a state interest of the highest order. *See Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97, 103–04, 105–06, 99 S.Ct. 2667, 2671, 2672, 61 L.Ed.2d 399

(1979); *Peavy v. New Times, Inc.,* 976 F.Supp. 532, 538 (N.D.Tex.1997). However, the media " 'has no special immunity from the application of general laws. [It] has no special privilege to invade the rights and liberties of others.' " *Branzburg v. Hayes,* 408 U.S. 665, 683, 92 S.Ct. 2646, 2657, 33 L.Ed.2d 626 (1972). Nor does the First Amendment guarantee the press a constitutional right of special access to information not available to the public generally. *Branzburg,* 408 U.S. at 684, 92 S.Ct. at 2658.

The KTRK parties expressly recognize in their brief that neither the First Amendment nor Article One, Section Eight allows them to violate the law. They instead argue that their actions were lawful. We have already held, however, that there are fact issues on whether the KTRK parties violated chapter 123 by attempting to record or by recording the courtyard conversation. Until those fact issues are resolved, it cannot be determined as a matter of law whether the KTRK parties legally obtained the audio recording and could thus possibly invoke either constitution's protection. *See Branzburg,* 408 U.S. at 691, 92 S.Ct. at 2662 (in dictum, stating, "Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news."). For this reason, the above-cited cases on which the KTRK parties rely are distinguishable. *See also Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (also relied on by the KTRK parties, but distinguishable because concerned

---

22. In issue 18, appellants claim that the trial judge erred in denying their own summary judgment motion concerning the KTRK parties' First Amendment affirmative defenses. However, the one page in their brief to which

issue 18 refers does not indicate where this motion can be found, and we have found no such·motion in our record. Accordingly, we overrule issue 18.

media's publishing information found in indictment that was public record). Accordingly, we sustain issues five and six.

Because we have sustained issues five and six, we also sustain issue four and the corresponding part of issue three because fact issues exist on the wiretapping claim. We thus need not reach appellants' issue 15, concerning the denial of their new trial motion.

### Conclusion

We reverse the judgment insofar as it rendered a take-nothing judgment on appellants' wiretapping claim under chapter 123 and insofar as it granted summary judgment on the KTRK parties' defenses of limitations, of laches, under U.S. CONST. amend. I, and under TEX. CONST. art. I, § 8. We affirm the summary judgment in all other respects. We remand the cause. We further overrule appellants' motion for sanctions.

Justice COHEN, who retired from the Court before this opinion's issuance, not participating.